**OLD AMERICAN COUNTY MUTUAL FIRE INSURANCE COMPANY,**
Petitioner,

v.

**Michael D. RENFROW,**
**et al., Respondents.**

No. 02–1087.

Supreme Court of Texas.

Feb. 13, 2004.

Rehearing Denied April 23, 2004.

Joseph W. Spence, John Christopher Nickelson, Shannon Gracey Ratliff & Miller, L.L.P., Michael Homer Martin, Kirkley Schmidt & Cotten, L.L.P., Fort Worth, for Petitioner.

John C. Stewart, Cantey & Hanger, L.L.P., Fort Worth, Derrick S. Boyd, Michael A. Simpson, Simpson & Boyd, P.L.L.C., Decatur, Kendall Wayne Hill, Law Offices of Kendall Hill, Bedford, for Respondents.

PER CURIAM.

■ This is a declaratory judgment action to determine coverage under the "omnibus clause" [1] of a commercial auto liability policy that insured an employer and "anyone else while using with your [that is, the employer's] permission a covered auto". The principal issue is whether an employee had implied permission to use a company truck at the time of an accident so as to be covered by the policy. The trial court held as a matter of law that the employee was covered, but the court of appeals reversed and remanded for a resolution of subsisting fact issues.[2] We hold that the employee, as a matter of law, materially deviated from any use he was permitted to make of the truck and therefore was not covered by the company policy.

In early 1999, Michael Renfrow worked for CD Consulting & Operating Co., an oil field services business located in Bridgeport, Texas, a town of about 4,000 at that time, northwest of Fort Worth. One Friday evening about 7 p.m., Renfrow returned from working at a well site near Justin, some thirty miles west of Bridgeport, finished his paperwork, and left CD Consulting's office for the day. Although Renfrow's personal truck was parked at the office, Bobby Campbell, CD Consulting's owner, let Renfrow take a company truck home, which was about half a mile away. Campbell would later testify that this was because Renfrow was due back at the well site at 6:00 a.m. the next day, and it was company policy to let an employee take a company truck home overnight when he had to be at a well site early the next morning. It is not entirely clear whether Renfrow knew of any such policy, and that Friday night he and Campbell did not specifically discuss what he could or could not do with the company truck. But Renfrow freely admits that he knew as a

1. An omnibus clause is a "provision in an automobile-insurance policy that extends coverage to all drivers operating the insured vehicle with the owner's permission." BLACK'S LAW DICTIONARY 1116 (7th Ed.1999).

2. 90 S.W.3d 810 (Tex.App.-Fort Worth 2002).

rule employees were not allowed to use company vehicles for personal business, this despite the fact that he was in the habit of driving a company truck to the home of his foreman, Jimmy Joe Stinnett, several nights a week to drink beer. Stinnett also lived in Bridgeport, not far from Renfrow.

Renfrow often drove a company truck to visit Mili Jo Roberts, too, and that is where he went when he left the office on the Friday night in question. Roberts lived in Bridgeport about a mile from CD Consulting's office. Sometime during the evening, Renfrow and Roberts decided to go to Saginaw, a suburb of Fort Worth, about forty miles away. Renfrow would later testify repeatedly and consistently that he knew he did not have permission to take the company truck to Roberts' home, let alone to Saginaw. Renfrow and Roberts were returning about 12:45 a.m. when the truck left the highway and hit an embankment. Roberts was killed and Renfrow was injured. Renfrow was later indicted by a Wise County grand jury for intoxication manslaughter.[3]

Roberts' beneficiaries sued Renfrow and CD Consulting for wrongful death. The jury found Renfrow negligent and grossly negligent, but did not find CD Consulting directly or vicariously liable. The trial court rendered judgment against Renfrow, and he did not appeal.

Old American, CD Consulting's insurer, sued for a declaration that Renfrow was not covered by its policy because he lacked permission to drive the company truck to Saginaw on personal business. The Roberts beneficiaries counterclaimed for payment of their judgment against Renfrow. Both sides moved for summary judgment,

and the trial court granted the beneficiaries' motion and denied Old American's. The court of appeals reversed and remanded, concluding that while Renfrow unquestionably did not have express permission to take the company truck to Saginaw, evidence of whether he had implied permission was in dispute, thus precluding summary judgment for either side.[4]

■ The Roberts beneficiaries argue, and the court of appeals agreed, that Renfrow's frequent use of a company truck to go to his foreman's and Roberts' homes was some evidence that he had implied permission to take the truck on personal business. But, there is no evidence to suggest that Renfrow ever used a company vehicle on personal business outside Bridgeport or had implied permission to do so.

■ The rule in Texas, stated in *Coronado v. Employers' National Insurance Co.*,[5] is that a person may deviate from the permitted usage of an insured vehicle and still be covered under an omnibus provision

> if the use is not a material or gross violation of the terms of the initial permission. Under this rule, the court must determine in each instance—taking into account the extent of deviation in actual distance or time, the purposes for which the vehicle was given, and other factors—whether the deviation was "minor" or "material."[6]

A deviation can be material as a matter of law, as it was in *Coronado*. In that case, one Sotelo, an employee of an oil well service business, was taking three of his crew members home late one afternoon in a company pickup when they decided to go

---

**3.** *See* Tex. Penal Code § 49.08.

**4.** 90 S.W.3d at 818.

**5.** 596 S.W.2d 502 (Tex.1980).

**6.** *Id.* at 504.

to a bar about three or four miles out of their way. There they stayed for three or four hours before adjourning to another bar not far away. They left the second bar "sometime after midnight, apparently many beers after leaving the company yard" and were involved in an accident.[7] A jury found that Sotelo was using the company pickup within the scope of his employer's permission, but the trial court set the finding aside, and the court of appeals affirmed.[8] We agreed, holding that

> the eight hour deviation engaged in by Sotelo was so gross as to be a material deviation as a matter of law. The use of the vehicle at the time of the accident was so far outside the scope of the permission granted Sotelo for use of the vehicle that we cannot say that a fact issue is raised that his employer had impliedly consented to this use.[9]

Similarly, in *Royal Indemnity Co. v. H.E. Abbott & Sons, Inc.*,[10] Herring, a ranch owner, provided two pickups for his employee, Landers, to use on the ranch. On several occasions, however, Herring and Landers had taken personal trips off the ranch in one of the pickups, and Landers had sometimes driven off the premises to pick up Herring's children at a school bus stop about five miles away. One evening, however, Landers drove a little over thirty miles to San Angelo on a personal errand and had an accident shortly after he arrived. A jury found that Landers was using the truck with Herring's permission, but we held that

> the evidence shows neither a relationship nor a prior course of conduct from which implied permission might fairly be inferred. Landers ... had never driven

one of the vehicles off the ranch except when specifically instructed to do so, and had never used any of them for a personal errand. His employer had always driven him to town whenever he wanted to go, and had no reason to believe that he intended or might need to use one of the vehicles on the evening of the accident. In view of these undisputed facts, the limited privileges Landers was allowed in the Herring house, his occasional pleasure trips with Herring, the availability of the vehicles, his use of the same on the ranch, Herring's inquiry about his driver's license, and the absence of any prior instruction not to take the vehicles off the ranch, afford no basis for concluding that Landers had implied permission to use the truck for a trip to San Angelo on a personal mission. We hold that there is no evidence to support a finding that the vehicle was being operated with the implied permission of the named insured.[11]

Likewise, we think Renfrow's trip to Saginaw was, as a matter of law, a material deviation from any implied permission he may have had to use the vehicle in Bridgeport. Renfrow's trip was a diversion similar to the employees' trips in *Coronado* or *Royal Indemnity*, and it was at least as far outside the scope of any permitted use.

The Roberts beneficiaries complain that the trial court erred by excluding from the summary judgment evidence Renfrow's late-filed affidavit, which states in full:

> My name is MICHAEL D. RENFROW. I am over the age of 18 years, and am competent to make this affidavit.

---

7. *Id.* at 503.

8. *Id.*

9. *Id.* at 506.

10. *399* S.W.2d 343 (Tex.1966).

11. *Id.* at 347.

I had permission to take the vehicle on the day in question. Any statement made to the contrary, whether taken at the time of trial or otherwise, is taken out of context or incorrect or otherwise is a mistake.

Assuming the affidavit should not have been excluded, the error was harmless. No one disputes that Renfrow had express permission to take the vehicle to his home, and we have assumed he had implied permission to take it to Roberts' home. The affidavit does not suggest that he had permission to take it as far away as Saginaw. The affidavit adds nothing.

Accordingly, we grant Old American's petition for review and without hearing oral argument,[12] reverse the court of appeals' judgment and render judgment for Old American.