NO. 07-02-0368-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 19, 2004

_____

TERRY TULL AND KATHRYN TULL, INDIVIDUALLY,
AND AS NEXT FRIENDS OF AMBER AND STEPHEN M. TULL AND
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, APPELLANTS

V.

CHUBB GROUP OF INSURANCE COMPANIES AND
FEDERAL INSURANCE COMPANY, APPELLEES

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 96-558,083-B; HONORABLE SAM MEDINA, JUDGE

_____

Before REAVIS and CAMPBELL, JJ., and BOYD, S.J.[1]

**OPINION**

Appellants Southern Farm Bureau Casualty Insurance Company (Farm Bureau) and

Terry and Kathryn Tull (the Tulls), acting individually and as next friends of their children

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment.

Amber and Steven Tull, appeal an adverse summary judgment on their claims against appellees Chubb Group of Insurance Companies and Federal Insurance Company. We will affirm.

The dispute giving rise to this appeal has its origin in an automobile collision that occurred in Lubbock on January 14, 1993, between vehicles driven by Melissa Shaffer and appellant Terry Tull. Shaffer was driving a pickup truck owned by her employer, Chase Portable X-Ray of Texas, Inc. (Chase). Shaffer was not performing work for Chase at the time and her boyfriend was a passenger in the truck. Members of the Tull family suffered injuries in the collision. Following the accident, Shaffer was arrested and charged with driving while intoxicated. Chase notified its insurance carrier Federal of the accident the following day.[2] Federal assigned employee Arla Boyd to investigate. Boyd was in contact with a lawyer representing the Tulls within a few days of the collision.

Shortly after the accident Chase terminated Shaffer's employment on the basis that her conduct violated several policies of Chase. In February 1993, Federal paid the Tulls' property damage claim of $7,225. The Tulls' automobile insurance policy, which included uninsured motorist coverage, was issued by Farm Bureau. In April 1993 Kitty Waters of Farm Bureau spoke with Boyd about the collision. Records of the telephone conversation made by both Waters and Boyd indicated Boyd said Federal had enough coverage to settle and she did not anticipate exposure for Farm Bureau. The two had a similar conversation in January 1994.

---

[2]Chubb is Federal's parent company. We will refer to both entities collectively as Federal.

The Tulls filed a negligence suit against Shaffer in October 1993 for their personal injuries, but did not obtain personal service on her. The suit did not name Chase as a defendant. Boyd continued corresponding with the Tulls' lawyer seeking information about their injuries and medical expenses. In October 1994, through Boyd, Federal made a conditional settlement offer of $70,500 to the Tulls' lawyer. No response is shown in the record. By December 1994 the Tulls still had not obtained personal service on Shaffer and, with permission of the trial court, served her by substituted service by certified mail to Shaffer's father in Big Spring.

Federal hired attorney Bob Craig in January 1995. Correspondence from Federal to Craig indicates he was hired to defend Federal's insured, Chase, "in the litigation filed against their insured driver, Melissa Schaeffer [sic]." In March 1995 Craig wrote the Tulls' lawyer, David Martinez, confirming previous conversations between the lawyers and asking about the status of medical bills and other information needed to evaluate the case. The letter also confirmed their agreement that Craig "did not need to file an answer" at that point, and that the lawyers would further discuss the value of the case before proceeding with the litigation.[3] Martinez responded less than a week later with a letter forwarding

[3]The two-paragraph text of the letter read as follows:

I am following up several personal conversations with you as well as telephone calls about this claim. You and I have talked about this particular case on several occasions. You had indicated that you would be getting to me all medical bills, reports and other information concerning damage claims by your client. I obviously need that information in order to evaluate this case and see if we can work something out.

We had also agreed that at this point I did not need to file an answer and that we could see what progress we could make about discussing the value

-3-

copies of his clients' medical bills and records and income tax returns, and offering to settle the case for $500,000. Martinez's letter made reference to the substituted service on Shaffer in December 1994, referring to her as "your client." It also stated Martinez recently had learned of an address for Shaffer in "Coppers Cove, Texas," but did not give the address. The record does not reflect further communication between Craig and Martinez. The "reference" lines at the beginning of Federal's letters to Craig in March 1995 listed Chase as the insured; the corresponding lines in Craig's letters to Federal listed Shaffer as the insured.

In April 1995 Federal sent a reservation of rights letter to Shaffer at the address it had for her in Lubbock and sent a copy to her father's address in Big Spring. That letter made reference to the Tulls' suit against her and the probability of a default judgment if she did not file an answer. It made no mention of Craig's involvement. The letter set out the grounds on which Federal based its contentions that the policy issued to Chase did not afford coverage for Shaffer. Shaffer did not respond to this letter or file an answer. On October 13, 1995, the Tulls obtained a default judgment against Shaffer for $654,200.21. No appeal was taken from that judgment.

In March 1996, Martinez took Shaffer's deposition by telephone. She was not represented by counsel, and no other party participated in the deposition.

of this case before answering the lawsuit and proceeding with formal discovery. As soon as you can get to me information about the injuries suffered by your clients and what claims are being made, it would be appreciated. My people need this information in order to appropriately evaluate this claim. Thanks for your help.

-4-

In an effort to recover their judgment, in November 1996 the Tulls filed suit against Federal and their own insurer, Farm Bureau. The Tulls' claim against Federal asserted they were third party beneficiaries of the insurance agreement between Federal and Chase. The Tulls' claim against Farm Bureau alleged Shaffer was an uninsured motorist and the Tulls were entitled to recover under the uninsured motorist coverage of their insurance contract with Farm Bureau. Both defendants answered. Federal challenged the Tulls' capacity to sue and asserted it had no liability under its policy with Chase because Chase was not named in the original suit, Shaffer was not an insured driver at the time of the collision, and Shaffer never tendered defense of the suit to Federal. Farm Bureau's answer denied Shaffer was an uninsured or underinsured motorist and alleged the Tulls were negligent in the operation of their car.

In April 1997 Federal filed a counterclaim seeking a declaratory judgment that it had no obligation to defend or indemnify Shaffer in the Tulls' original suit. The following January, it moved for summary judgment on the counterclaim, advancing several theories in support, including the argument that the summary judgment evidence showed Shaffer was not an insured driver because she was not a permissive user performing work for Chase and was in violation of several applicable Chase employment policies.

In its response to Federal's motion, Farm Bureau argued Federal was prevented by estoppel or waiver from denying coverage because it assumed defense of the suit with knowledge of the relevant facts and without taking any steps to preserve its ability to later contest coverage. In November 1999 Farm Bureau filed a supplemental answer and cross-claim, which asserted its contentions that Federal was barred by estoppel and waiver

from denying coverage for the Tulls' claims against Shaffer, and asserted that in the event it was liable to the Tulls it held a right of subrogation against Federal for such amounts. It also alleged that Federal had breached a duty it owed Farm Bureau as an "excess carrier" by representing that Federal had accepted the Tulls' claim and "had enough coverage to handle the claims." The pleading then asserted "to the extent of the breach of [Federal's] duty, [Farm Bureau] is entitled to equitable subrogation against Federal." It conditionally sought recovery from Federal for any amount for which it may be held liable to the Tulls, together with attorneys fees, costs, and interest. In December 2001 Farm Bureau filed a second supplemental answer and cross-claim, in which it asserted a negligent misrepresentation claim against Federal.

Federal filed additional motions for summary judgment on Farm Bureau's cross-claims. Federal's third motion for summary judgment, filed in February 2002, sought judgment on Farm Bureau's negligent misrepresentation claim, arguing the claim was barred by limitations. It also argued it was entitled to judgment on the claim because there was no evidence of any injury to Farm Bureau caused by a misrepresentation of Federal. *See* Tex. R. Civ. Proc. 166a(i). The trial court granted all three of Federal's summary judgment motions, eventually entering a judgment that Farm Bureau take nothing from Federal and severing the claims asserted by the Tulls and Farm Bureau against Federal, making the judgment final. Farm Bureau and the Tulls filed notices of appeal from that judgment.

Farm Bureau has filed a brief presenting eight issues. The Tulls did not timely file a brief but have filed a motion to allow them to adopt the brief filed by Farm Bureau.

The standards governing review of summary dispositions under Rule of Civil Procedure 166a are well established. A summary judgment movant bears the burden to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548 (Tex. 1985). We must take evidence favorable to the non-movant as true and indulge in every reasonable inference in favor of the non-movant. *Id.*

We review no-evidence summary judgments under Rule of Civil Procedure 166a(i) to determine whether, in response to the motion, the non-movant produced any probative evidence to raise a material fact issue. In so doing we apply the same legal sufficiency standard as is used in reviewing a directed verdict, considering the evidence in the light most favorable to the non-movant and disregarding all contrary evidence and inferences. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). If the non-movant presents more than a scintilla of probative evidence to raise a genuine material fact issue, summary judgment should not have been granted. *Id.* at 751; *Wal-Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002). More than a scintilla of evidence exists when the evidence rises to a level such that reasonable and fair-minded people could differ in their conclusions. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

Farm Bureau's first two issues simply ask whether the trial court erred in granting summary judgment and whether there are any genuine issues of material fact precluding summary judgment. Resolution of its other issues will be dispositive of those issues.

Farm Bureau's third issue questions whether Federal is estopped from denying coverage under the policy for Shaffer's liability to the Tulls. Its fifth issue similarly questions whether Federal has waived its policy defenses.

In a proper case, estoppel can prevent an insurer from asserting policy defenses. *Employers Casualty Co. v. Tilley*, 496 S.W.2d 552, 560 (Tex. 1973). This can occur when an insurer undertakes defense of a case without qualification or reservation of the right to later deny its obligation to provide indemnity if its insured is found liable. *See American Indem. Co. v. Fellbaum*, 114 Tex. 127, 263 S.W. 908 (Tex. 1924); *Farmers Texas County Mutual Ins. Co. v. Wilkinson*, 601 S.W.2d 520 (Tex.Civ.App.–Austin 1980, writ ref'd n.r.e.). It is also generally held that estoppel cannot be used to create insurance coverage where none exists by the terms of the policy. *Texas Farmers Ins. Co. v. McGuire*, 744 S.W.2d 601, 602-03 (Tex. 1988). An exception to that general rule holds, though, that an insurer undertaking, or continuing, defense of a claim while having knowledge of facts indicating the claim is not covered under its policy, without an effective reservation of rights, may waive, or be estopped from asserting, all policy defenses, including the defense of non-coverage. *Wilkinson*, 601 S.W.2d at 521-22. Although the exception has not been directly addressed by our Supreme Court, *see McGuire*, 744 S.W.2d at 603 n.1, it has been recognized by several Texas courts of appeals. *Katerndahl v. State Farm Fire & Cas. Co.*, 961 S.W.2d 518, 523 (Tex.App.–San Antonio 1997, no writ); *Paradigm Ins. Co. v. Texas Richmond Corp.*, 942 S.W.2d 645, 652 (Tex.App.–Houston [14th Dist.] 1997, writ denied)*; State Farm Lloyds v. Williams*, 791 S.W.2d 542, 551 (Tex.App.--Dallas 1990, writ denied); *see Rodriquez v. Texas Farmers Ins. Co.*, 903 S.W.2d 499, 510 (Tex.App.–Amarillo 1995,

writ denied); *see also Arkwright-Boston Mfrs. Mut. Ins. Co. v. Aries*, 932 F.2d 442 (5th Cir. 1991).

After considering the parties' arguments and the authority cited, we are convinced estoppel and waiver are not applicable here. The exception stated in *Wilkinson* is premised on the assumption of defense of the underlying cause by the insurer. 601 S.W.2d at 521-22. Craig did not file an answer or otherwise appear in the lawsuit on behalf of Shaffer. Farm Bureau argues Craig's letter to Martinez reflects actions that are the equivalent of entering an appearance. We disagree. Craig's actions do not provide evidence that Federal undertook Shaffer's defense for purposes of the *Wilkinson* exception. They do not reflect that Federal exercised control over her defense. *See Williams*, 791 S.W.2d at 551.

Farm Bureau also points to Federal's payment of the Tulls' property damage claim, and to its offer to settle their personal injury claims made in Boyd's October 1994 letter to the Tulls' lawyer, as grounds for the application of estoppel or waiver to its non-coverage defense. Under Texas law, payment of some policy benefits does not necessarily work estoppel or a waiver of an insurer's non-coverage defense. *Washington Nat'l Ins. Co. v. Craddock*, 130 Tex. 251, 253, 109 S.W.2d 165, 166 (Tex. Comm'n App. 1937, opinion adopted); *see Williams*, 791 S.W.2d at 551. Neither Federal's payment of the Tulls' property damage losses nor its extension of a settlement offer on their other claims precluded summary judgment against Farm Bureau on its estoppel and waiver theories. Nor do we find either of those actions, undertaken before Shaffer was served and before

limitations expired on the Tulls' ability to make Federal's named insured, Chase, a defendant, to be evidence that Federal undertook defense of Shaffer.

Further, application of the doctrines of estoppel or waiver under the *Wilkinson* exception requires a showing that the insured was prejudiced by the insurer's conduct. *Katerndahl*, 961 S.W.2d. at 524; *Rodriquez*, 903 S.W.2d at 510; *Williams*, 791 S.W.2d at 552. The summary judgment record contains no evidence that Craig's actions, or those of Federal, operated to harm Shaffer or prejudice her position in the Tulls' lawsuit against her. Farm Bureau argues that it suffered detriment from Federal's actions, pointing out that Federal's actions were consistent with Boyd's statements to Waters, and contending they caused it to lose the opportunity to settle with the Tulls. Even if we accepted Farm Bureau's contentions as true for the purpose of this argument, we cannot agree that prejudice to Farm Bureau properly can substitute for prejudice to Shaffer for purpose of the *Wilkinson* exception. We find Federal was not estopped to assert, and did not waive, its non-coverage defense, and overrule Farm Bureau's third issue.

Farm Bureau's fifth issue also challenges the trial court's sustention of Federal's policy defenses as grounds for the summary judgment. The first policy defense challenged by Farm Bureau is Federal's claim that Shaffer was not an insured driver because she was not a permissive user of Chase's truck at the time of the collision.

The parties agree that because Shaffer was not a named insured, coverage depends on whether she was a permissive user of the vehicle owned by Chase. It is also undisputed that at the time of the collision, Shaffer was not going to or from a work

assignment or doing other work for Chase. The summary judgment evidence shows the vehicle was provided for Shaffer to perform her duties for Chase and several restrictions applied to her use of it. Farm Bureau does not contend there is evidence Shaffer had Chase's express permission to use the vehicle for the purpose and at the time and place at which she was driving it when she collided with the Tulls.

In *Coronado v. Employers' National Ins. Co.*, 596 S.W.2d 502 (Tex. 1979), the Texas Supreme Court adopted the "minor deviation" rule for determining whether vehicle use not expressly authorized may still be permissive use under an automobile insurance policy. *Id.* at 505. Under this standard, insurance protection will be afforded if the use is not a material or gross violation of the terms of the initial permission. *Id.* at 504. The Supreme Court recently reiterated the holding of *Coronado* in *Old American County Mut. Fire Ins. Co. v. Renfrow*, 130 S.W.3d 70 (Tex. 2004) (per curiam).

Farm Bureau quotes the following passage from *Coronado* for the proposition that whether Shaffer was a permissive user of Chase's truck when the collision occurred is a fact question:

> Some deviations would be so slight as to not raise a fact issue that the permission was revoked; other deviations of more significance would raise a fact issue for the fact-finder; while still other deviations might be so gross as to destroy the initial permission as a matter of law.

596 S.W.2d at 506. The determination whether a deviation is material requires consideration of the extent of the deviation in terms of actual distance or time, the purposes for which the vehicle was provided, and other factors. 596 S.W.2d at 504.

-11-

Neither party provides us with any discussion of the factors identified in *Coronado* for distinguishing between minor and material deviations. Farm Bureau asserts that Federal's motion for summary judgment on its permissive use defense relied on the affidavit of Shaffer's supervisor, and that the affidavit was self-serving and conclusory. Federal responds that other summary judgment evidence supported its permissive use defense. Its argument, though, appears to be based on the premise that any violation of a company policy is a gross deviation. That notion was rejected in *Coronado*. 596 S.W.2d at 506. Nonetheless, we readily conclude the summary judgment record establishes that Shaffer's use of Chase's truck at the time of the collision was a material deviation from her permitted use as a matter of law.

In her post-judgment deposition, Shaffer testified that her own understanding was that she was to use the company's vehicle "basically only when I was working." She also testified to a conversation with her supervisor following the accident in which she agreed she knew not to drive the vehicle when she was not working. Her supervisor's affidavit states that employees had permission to operate company vehicles only while performing company-related business, and were prohibited from doing so for "personal matters." His affidavit further states that employees were strictly prohibited from carrying passengers in company vehicles. That assertion is supported by excerpts from Chase's "Associate Handbook" attached to the affidavit, one of which states that "no person who is not a Chase associate may be in a Chase company vehicle." The record reflects that Shaffer's boyfriend was with her in the vehicle at the time of the collision. Shaffer testified she was on her way to some friends' house to visit when the accident occurred. Both Shaffer's

testimony and her supervisor's affidavit indicate that her duties ended at 5:00 p.m. The collision occurred shortly after 6:00 p.m. There is no suggestion in the record, though, that the accident occurred as Shaffer was returning home at the end of the work day. Shaffer testified she did not think she had been working prior to the time she headed to her friends' house. Nor is there evidence in this case like that relied on by the dissenting opinion in *Coronado*, 596 S.W.2d at 506. There, similar deviations had occurred in the past, leading the dissenting justices to argue that a fact question was raised concerning the employer's acquiescence. Here, Shaffer had been employed by Chase for only two or three weeks at the time of the collision.

The summary judgment record also contains evidence of Shaffer's consumption of alcohol before the collision. In *Coronado,* the Supreme Court did not treat use of an employer's vehicle after drinking alcohol as a material deviation as a matter of law. 596 S.W.2d at 505. Here, though, the uncontroverted evidence is that Shaffer was intoxicated. No other party has contradicted the statements in Farm Bureau's brief that Shaffer was arrested for "drunk driving" and taken to jail, and that she was eventually convicted of driving while intoxicated.

On this record, Shaffer's use of her employer's vehicle, while in an intoxicated condition, to drive with her boyfriend to visit friends must be held to have deviated materially from her permitted use of the vehicle and therefore to have been without permission. *Renfrow*, 130 S.W.3d at 73; *Coronado*, 596 S.W.2d at 506; *see Minter v. Great American Ins. Co. of New York*, No. Civ.A.3:02-CV-2040-K, 2004 WL 515615, slip

op. at 7 (N.D. Tex., Feb. 27, 2004) (driving while intoxicated material deviation from express permission as matter of law). Farm Bureau's fifth issue is overruled.

By its fourth issue, Farm Bureau contends it is entitled to a right of equitable subrogation against Federal for any amounts it might pay to the Tulls under the uninsured motorist provision of its policy with them. This court has referred to subrogation as the right of one who has paid an obligation which another should have paid to be indemnified by the other. *Employers Cas. Co. v. Dyess*, 957 S.W.2d 884, 886 (Tex.App.–Amarillo 1997, pet. denied); *see Texas Ass'n of School Boards, Inc. v. Ward*, 18 S.W.3d 256, 258 (Tex.App.–Waco 2000, pet. denied). Since by our disposition of Farm Bureau's fifth issue we have concluded Federal had no obligation to pay the judgment the Tulls obtained against Shaffer, it follows that no right of subrogation may accrue to Farm Bureau against Federal by virtue of any payment Farm Bureau may make toward that judgment. We overrule Farm Bureau's fourth issue.

Farm Bureau's sixth issue concerns its cause of action for negligent misrepresentation by Federal that there was sufficient coverage to handle the Tulls' claims. The elements of a claim for negligent misrepresentation are:

> 1) a representation made by the defendant in the course of the defendant's business, or in a transaction in which the defendant has a pecuniary interest;

> 2) the defendant supplied false information for the guidance of others in their business;

> 3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

-14-

4) the plaintiff suffered pecuniary loss by justifiably relying upon the representation.

*Federal Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991); *Zipp Indus., Inc. v. Ranger Ins. Co.*, 39 S.W.3d 658, 668 (Tex.App.--Amarillo 2001, no pet.). The sort of "false information" contemplated in a negligent misrepresentation case is a statement of existing fact, not a promise of future conduct. *New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 124 (Tex.App.–Austin 2003, no pet.); *Key v. Pierce*, 8 S.W.3d 704, 709 (Tex.App.–Fort Worth 1999, pet denied); *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex.App.–Houston [14th Dist.] 1999, pet. denied).

Farm Bureau's negligent misrepresentation claim is based on the conversations between adjusters Arla Boyd and Kitty Waters. Farm Bureau's pleadings allege Boyd represented to Waters in those conversations that Farm Bureau "need not concern themselves" with any exposure under the Tulls' uninsured/underinsured motorist coverage because there was enough coverage under Federal's policy such that Boyd "did not see any exposure" for Farm Bureau's UM/UIM coverage. Farm Bureau further alleged that, in reliance on those representations, it did not endeavor to investigate the claim fully and did not attempt to negotiate resolution of it with the Tulls. As a result, Farm Bureau alleged, it was damaged in the loss of opportunity to investigate and settle the claim and damaged by being made a party to the suit brought by the Tulls. In its response to Federal's no-evidence motion for summary judgment on the negligent misrepresentation claim, Farm Bureau submitted an affidavit of its attorney stating the attorneys fees and expenses incurred to that date in the present litigation.

-15-

On appeal, Farm Bureau argues that it did not attempt to settle with the Tulls and assert its resulting subrogation rights against Shaffer because Federal affirmatively represented to it that Federal would cover the loss. It complains that by the time Federal "decided to revoke coverage," more than two years after the accident, Farm Bureau's potential subrogated claim against Shaffer was barred by limitations.

There is summary judgment evidence of two telephone conversations between Boyd and Waters, one in April 1993, the second in January 1994. The conversations apparently dealt both with Farm Bureau's payments to the Tulls under the personal injury protection (PIP) coverage under their Farm Bureau policy and with Farm Bureau's possible exposure under its uninsured motorist coverage. Boyd's handwritten record of the first conversation in her claim file states that in response to Waters' inquiry about possible exposure to Farm Bureau, Boyd "told her I felt we had enough cov[erage] to settle." Her notes of the January 1994 conversation contain the statement, "told her I don't see exp[osure] for their UM." Waters' versions of the conversations, contained in one-page memoranda to her supervisor, are similar. In an April 1993 memo, Waters summarized the status of PIP claim payments and her dealings with the Tulls' lawyer concerning medical reports, then stated: "One bit of good news. I talked with Arla, the adjuster for the adverse carrier and although she would not tell me her limits, she did state that she felt very comfortable in saying that she didn't think we needed to worry about any UMBI exposures. She agreed to let me know if her opinion changed for any reason." Waters' January 1994 memo to her supervisor, following its discussion of medical bills and reports and the pending PIP claims, contains this paragraph: "I have also talked with Arla, the T/P

carrier adjuster again today. She again states that she does not feel we have any exposure for any UM claims." Farm Bureau emphasizes that Federal, even at the time of the April 1993 conversation, was in possession of the facts that Shaffer was intoxicated at the time of the accident and had an unauthorized passenger in the vehicle, facts on which it later relied to deny coverage, yet Boyd still made the representations.

Federal's no-evidence motion for summary judgment contended Boyd's statements were not actionable negligent misrepresentations. We agree. In their context, Boyd's statements are at most representations concerning Federal's future handling of the Tulls' personal injury claims. Viewed in the light most favorable to Farm Bureau, all of the statements still refer to actions Boyd felt Federal would take in settlement of the claims. They are not statements of existing fact.

Moreover, the summary judgment record contains no evidence that Boyd's statements, made in April 1993 and January 1994, were the cause of Farm Bureau's decisions not to pursue settlement with the Tulls before the October 1995 default judgment against Shaffer, or before the January 1995 limitations date of two years following the accident. Waters' memos do not say as much, and do not provide a basis for a reasonable inference that such was the case. State Farm did not close its claim file after the January 1994 conversation. Waters' memo following that conversation refers to additional medical information she had requested from the Tulls' lawyer, Martinez, to support their PIP claims. The memo also indicates that the file was "diaried" for review in ninety days.

The trial court did not err in granting summary judgment against Farm Bureau on its negligent misrepresentation claim against Federal. We overrule Farm Bureau's sixth issue.

Farm Bureau's seventh issue is stated as "whether equity bars a liability insurer from denying coverage when it represents to an uninsured motorist insurer that sufficient liability coverage exists to cover the claims asserted by the uninsured motorist carriers' insured." It makes no discrete argument in support of the issue, though, but simply asserts, in its discussion of negligent misrepresentation, that "[e]quity should impose a duty on an insurer like Federal from making positive assertions about coverage to an uninsured motorist carrier like Farm Bureau." It provides no authority for the assertion. The issue does not present a basis on which we could find error in the trial court's judgment, and is overruled.

Our dispositions of Farm Bureau's third through seventh issues are dispositive of its first two issues generally challenging summary judgment in favor of Federal. Discussion of its eighth issue, which questions whether Federal may assert a policy defense based on Shaffer's failure to cooperate in her defense, is not necessary.

The Tulls' motion to adopt the brief filed by State Farm is granted. The judgment of the trial court is affirmed.

James T. Campbell
Justice

-18-