**SENTRY SELECT INSURANCE COMPANY, Plaintiff**

**v.**

**Jessica LOPEZ, et al., Defendants.**

**EP–14–CV–284–KC**

United States District Court,
W.D. Texas, El Paso Division.

Signed 03/14/2017

Russell J. Bowman, Bowman & Stella, P.C., Irving, TX, for Plaintiff.

·Langdon Milton Smith, III, Jim S. Adler & Associates, Houston, TX, Stewart W. Forbes, Forbes & Forbes, Alejandro Acosta, III, Flores, Tawney & Acosta, PC, James F. Scherr, El Paso, TX, for Defendants. .

## ORDER

KATHLEEN CARDONE, UNITED STATES DISTRICT JUDGE

On this day, the Court considered Plaintiff Sentry Select Insurance Company's Motion for Summary Judgment on the Duty to Indemnify ("Motion"), ECF No. 78, in the above-captioned case. For the reasons set forth below, the Motion is **GRANTED**.

## I.  BACKGROUND

The basic factual contours of this case, including the facts surrounding the relevant state-court litigation, are outlined in this Court's Order granting summary judgment to Sentry Select on the issue of its duty to defend. *See* Order of March 18, 2016, ECF No. 65. Nonetheless, the Court reiterates that this case arises out of a tractor-trailer accident that resulted in the deaths of Roger Franceware and Lorenzo Munoz. *See id.* at 1–2. Franceware and Munoz were the occupants of the truck at the time of the fatal accident, and they were hauling a trailer leased by Goal Transports, Inc. ("Goal") from Dykes and Dykes Trailer, Inc. at that time. *See id.* Prior to the accident, Trans Front, Inc. ("Trans Front"), a transportation company, had frequently been hauling Goal trailers back and forth between a Goal facility in El Paso, Texas and a Trans Front facility in Juarez, Mexico via deals brokered by an entity called Transport Enlace. App. to Def.'s Mot., ECF No. 79–1, Sotelo Dep. at 23:7–24:16.

Of particular relevance here is the omnibus provision of the Sentry Select commercial auto insurance policy issued to Goal which contains language indicating that "anyone ... while using with ... *permission* a covered 'auto' you own, hire, or borrow" is an "insured." App. to Pl.'s Mot. Summ. J. on Duty to Defend Issue at 26, ECF No. 26–1. (emphasis added). The policy also indicates that: " 'Auto' means: A land motor vehicle, 'trailer' or semitrailer designed for travel on public roads." *Id.* at 35. Finally, the policy explains that: "[Sentry] will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto.' " *Id.* at 25.

## II.  DISCUSSION

### A.  Standard

A court must enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quoting *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 189 (5th Cir. 1996).

"[The] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those por-

tions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Wallace v. Tex. Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). To show the existence of a genuine dispute, the nonmoving party must support its position with citations to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ... admissions, interrogatory answers, or other materials [,]" or show "that the materials cited by the movant do not establish the absence ... of a genuine dispute, or that [the moving party] cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

A court resolves factual controversies in favor of the nonmoving party, but establishing a factual controversy requires more than "conclusory allegations," "unsubstantiated assertions," or "a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Further, when reviewing the evidence, a court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh evidence. *Man Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478–79 (5th Cir. 2006) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Thus, the ultimate inquiry in a summary judgment motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

## B. Analysis

On March 31, 2015, Plaintiff filed its Second Amended Complaint in this matter, seeking a declaratory judgment that it has no liability to Defendants in connection with a judgment obtained by Defendants in Cause No. 2010–4169 filed in the 168 Judicial District Court of El Paso County, Texas. *See* Second Am. Compl. for Declaratory J., ECF No. 45; J. Correcting J. Signed June 3, 2014, First Am. Compl. for Declaratory J. Ex. B, ECF No. 12–2. On March 18, 2016, this Court granted summary judgment to Plaintiff on the duty to defend issue. *See* Order of March 18, 2016, ECF No. 65. Now, Plaintiff moves this Court for summary judgment on whether it has a duty to indemnify the Lopez or Munoz Defendants. *See* Pl.'s Mot.

### 1. Burden of establishing insurer's duty to indemnify

Under Texas law, which governs this diversity case,[1] the duty to defend and the duty to indemnify "enjoy a degree of independence from each other." *D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743–44 (Tex. 2009); *see King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002) (internal citations omitted).[2] The duty to defend arises before litigation is completed and is determined by evaluating the pleadings and the policy language in accordance with the eight-comers rule. *See GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). By contrast, "the duty to indemnify ... [is based] upon the actual facts that underlie the cause of action[.]" *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins.*

---

1. In diversity cases, federal courts look to the substantive law of the forum state. *Tex. Indus., Inc. v. Factory Mut. Ins. Co.*, 486 F.3d 844, 846 (5th Cir. 2007).

2. The duty to defend is broader than the duty to indemnify. *Am. States Ins. Co. v. Bailey*,

133 F.3d 363, 368 (5th Cir. 1998) (applying Texas law) (internal citation omitted). In some circumstances, the pleadings can abrogate both the duty to defend and the duty to indemnify. *See Farmers Tex. Cty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). This is not one of those cases.

*Co.*, 99 F.3d 695, 701 (5th Cir. 1996) (applying Texas law). (internal citation omitted); *see also Tesoro Pet. Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d 118, 125 (Tex. App. 2002) ("Facts, however, not allegations, determine an indemnitor's duty to indemnify."). Extrinsic evidence may be considered when analyzing whether a duty to indemnify exists. *See Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co.*, 334 S.W.3d 217, 219 (Tex. 2011).

■ The prospective insured has the initial burden of establishing the insurer's duty to indemnify by presenting sufficient facts to demonstrate coverage under the policy. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010). If the prospective insured meets that burden, the insurer must prove that the loss is within an applicable exclusion. *See id.* The moving party bears the burden of identifying portions of the record which it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. If the moving party meets this burden, the nonmovant must designate facts showing that a genuine issue for trial exists. *Id.* at 324, 106 S.Ct. 2548. If the moving party fails to meet its burden, the motion must be denied. *Id.* Only when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party" is a full trial on the merits warranted. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505.

### 2. Permission

The crux of this dispute is whether Franceware or Munoz were using Goal's trailer with Goal's "permission" at the time of the fatal accident. Plaintiff asserts that the only part of the Sentry Select policy that could "possibly apply" is the "omnibus insured provision," Pl.'s Mot. 7, which specifies that "anyone ... while using with ... *permission* a covered 'auto' you own, hire, or borrow" is an "insured." App. to Pl.'s Mot. Summ. J. on Duty to Defend Issue 26 (emphasis added). Likewise, the Lopez Defendants pinpoint "whether any party to the State Court Litigation used the subject trailer with Goal's permission" as "[t]he only disputed ground for summary judgment."[3] Lopez Defs.'Resp. 10. The Munoz Defendants incorporate the Lopez Defendants' arguments as to the permission issue and focus a portion of their own Response on the question of permission. *See* Munoz Defs.' Resp. 3–12.

■ In Texas, permission to use a vehicle within the meaning of an automobile policy's omnibus clause[4] is "consent to use the vehicle at the time and place in question and in a manner authorized by the owner, either express or implied." *Minter v. Great Am. Ins. Co.*, 423 F.3d 460, 466 (5th Cir. 2005) (citing *Hartford Accident & Indem. Corp. v. Lowery*, 490 S.W.2d 935, 937 (Tex. App. 1973)). The Texas Supreme Court has held that express permission "must be affirmatively stated," but "implied permission may be inferred from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent." *Royal Indem. Co. v. H.E. Abbott & Sons, Inc.*, 399 S.W.2d 343, 345 (Tex. 1966). Implied permission is usually shown by usage and practice of the parties over a period of time preceding the occasion during which the "permission" is in dispute. *See id.* Fur-

---

3. The Court recognizes that the Lopez and Munoz Defendants do offer other arguments to defeat summary judgment and addresses them below.

4. An omnibus clauses is: "[a] provision in an automobile-insurance policy that extends coverage to all drivers operating the insured vehicle with the owner's permission." Black's Law Dictionary 1880 (10th ed. 2014).

ther, one may only deviate from the permitted use of an insured vehicle and remain covered under an omnibus provision if the use is a "minor deviation" from the terms of the initial permission. *Old Am. Cty. Mut. Fire Ins. Co. v. Renfrow*, 130 S.W.3d 70, 72 (Tex. 2004). Under this "minor deviation" rule, the court must determine in each instance—taking into account the extent of deviation in actual distance or time, the purposes for which the vehicle was given, and other factors—whether the deviation from any express or implied permission was "minor" or "material." *Id.* The Court analyzes the questions of express permission, implied permission, and the whether any deviation in use was minor or material in turn.

### a. Express permission

■ First, as to the question of express permission, Plaintiff flatly asserts that none exists. Pl.'s Mot. 13, 19. Likewise, Defendants do not argue that Goal "affirmatively stated" that Franceware and Munoz were permitted to use Goal's trailer, as required to show express permission. *Royal Indent. Co.*, 399 S.W.2d at 345. Accordingly, the Court finds that Franceware and Munoz did not have express permission to haul Goal's trailer. *See id.*

### b. Implied permission

■ Second, as to the question of implied permission, Plaintiff asserts that no implied permission can exist for a "use that had been prohibited[.]" Pl.'s Mot. 19. The Lopez Defendants argue that Goal "allowed … Transports Enlace … to use the trailer[;]" that "Goal had sent empty trailers to Mexico via Enlace and Trans Front before[;]" that "Goal had no knowledge of the trailer's location until it was involved in the … accident[;]" that "Trans Front did not … enact a numbering system to distinguish the various trailers in its possession[;]" and that "Goal was expressly aware of Trans Front's possession of [the trailer] immediately preceding the accident giving rise to this case." Lopez Defs.' Resp. 14–15. The Lopez Defendants also point out that "[a]ll throughout the summer of 2010, Trans Front and its two drivers hauled Goal's trailers from El Paso to Mexico and back via broker deals with Enlace," characterizing this arrangement as a "free exchange of equipment leased by Goal." *Id.* at 15. The Lopez Defendants conclude that this course of conduct "raises genuine questions as to whether … any subsequent operator of the trailer like Munoz … would be deemed Goal's 'agents or employees' by law." *Id.* In a similar vein, the Munoz Defendants assert that the following "raise[s] a fact issue on express or implied permission":

(1) Goal Transports expressly permitted a driver to leave the yard with the trailer at 1:20 p.m. on July 22, 2010; (2) Rosalinda Vigil admitted Goal was aware the trailer was not returned the next day; (3) Goal made no effort to contact Dykes and Dykes (the trailer owner) or authorities regarding the trailer for more than twenty-five (25) days until the incident on August 17, 2010; (4) Sotelo admitted the bill of lading reflecting shipment of "23 Pallets of Computer components" for delivery to "Service by Air" at Greensboro, North Carolina was accurate; and (5) Roger Franceware was Vigil's nephew; so that whether Moore Freight, XMEX Transport, Chip Strader and/or Roger Franceware (as an employee of Moore Freight and/or XMEX) was "using" the trailer with Goal Transports' express or implied permission is an issue of fact.

Munoz Defs.' Resp. 12.

As explained above, the Texas Supreme Court has held that implied permission may be "inferred from a course of conduct or relationship where there is mutual acquiescence or lack of objection signifying

consent to use," shown by "usage or practice of the parties" over a length of time. *Royal Indem. Co.*, 399 S.W.2d at 345. And indeed, the Lopez Defendants attempt to marshal the fact that Trans Front hauled Goal trailers between El Paso and Juarez frequently in the summer of 2010 in support of their argument that Goal created a "laissez faire" environment characterized by the "free exchange of equipment"—and in so doing, that Goal impliedly granted permission to subsequent operators of Goal trailers, like Munoz and Franceware. Lopez Defs.' Resp. 15.

Yet Defendants fail to offer evidence of a single instance of a Goal trailer being used outside the course of dealing expressly contemplated by Goal and Trans Front—that is, Trans Front hauling Goal trailers back and forth from El Paso to Juarez. Vigil Dep. at 32:6–40:15. Instead, Defendants essentially offer evidence of a history of use *strictly within* the arrangement contemplated by Goal and Trans Front to support their contention that implied permission existed to operate *outside* of the very same arrangement. *See* Lopez Defs.' Resp. 14–15 ("All through the summer of 2010, Trans Front and its two drivers hauled Goal's trailers from El Paso to Mexico and back. . ."). However, courts have held that people involved in automobile accidents who were later sued did *not* have implied permission even when those people had previously driven the automobiles outside the scope of their express authorization on multiple occasions. *See Royal Indem.*, 399 S.W.2d at 345 (finding no implied permission when a ranch employee ran a personal errand in a ranch vehicle despite having used the vehicle for non-ranch business "[o]n three or four occasions prior to the accident"); *Coronado v. Emps. Nat. Ins. Co.*, 577 S.W.2d 525, 529 (Tex. App. 1979), *aff'd Coronado v. Emp'rs Nat. Ins. Co.*, 596 S.W.2d 502 (Tex. 1979) (finding no implied permission to travel to a bar in a company pickup when the "evidence established] that [an employee] did go to bars . . . in his Company pickup with some frequency" and with his employer's knowledge). These precedents militate against finding that implied permission exists based on evidence of use exclusively within Goal and Trans Front's course of dealing. *Coronado*, 577 S.W.2d at 529.

Defendants also offer a complementary argument meant to show that Trans Front and Goal's practices effectively created a "free exchange of equipment leased by Goal": that Trans Front did not establish a numbering system to identify the trailers on its lot. Lopez Defs.' Resp. 15. While Defendants do not directly claim that this is an element of a "usage and practice" signifying implied consent to use Goal's equipment, the Court takes up the argument nonetheless, as it is the only other argument that could conceivably buttress Defendants' contention that the usage and practice of the parties created implied consent for Franceware and Munoz to use the trailer. Defendants do not go so far as to claim that any drivers on the Trans Front lot actually had trouble distinguishing between trailers; nor do they offer any other evidence of drivers permissively using trailers as a matter of course because they were unable to identify the appropriate ones for want of an Trans Front numbering system. The Court also notes that Defendants acknowledge that a numbering system exists for the relevant trailer. Lopez Defs.' Resp. 8 ("Goal acquired the subject trailer (No. 5386) via lease. . . ."). Thus, Defendants appear to argue that Trans Front should have implemented an independent numbering system for the trailers on its lot. The Court does not agree that the failure to employ a numbering system of any sort is an element of usage or practice sufficient to create implied permission.

In a case relevant to the overarching implied permission analysis, *Globe Indent. Co. v. French*, a college student loaned his car to a friend to use for a social outing. *See* 382 S.W.2d 771, 772 (Tex. App. 1964). The friend subsequently allowed a passenger in the vehicle to drive the car, and the passenger collided with a number of parked cars, causing damages for which he was later sued. *See id.* The trial court held that the passenger had implied permission to drive the car; in reversing, the appellate court wrote:

> [T]o affirm the judgment of the lower court we would in effect be holding that when a college student loans his car to a friend of long standing all other students riding in the car have his implied permission to drive it regardless of his knowledge of their habits or regardless of his previous relationship with them. This court is not willing to extend the doctrine of implied consent that far until higher authority requires us to do so.

*Id.* at 774.

The *Globe Indemnity* court was especially loath to extend the doctrine of implied permission to a large number of potential drivers without evidence tending to show a "course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent." *Id* at 774–75. The same is true of this Court. Defendants' key arguments—those concerning the trailer-hauling arrangement between Goal and Trans Front and Trans Front's failure to assign numbers to trailers on its lot—are ultimately bereft of *evidence* showing the existence of a free-for-all environment where non-Goal drivers were implicitly permitted to haul Goal trailers on non-Goal trips. Instead, these arguments are largely rhetorical and best characterized as "conclusory allegations" and "unsubstantiated assertions" insufficient to defeat summary judgment. *See Little*, 37 F.3d at 1075.

The *Globe Indemnity* court elaborated on the nature of implied permission, writing that "'permission' contemplates something more than mere sufferance or tolerance without taking steps to prevent, and the term is used in the sense of leave, license or authority with the power to prevent." *Globe Indem. Co.*, 382 S.W.2d at 774. This cuts directly against the Lopez Defendants' contention that, for example, "Goal documented no safeguards that would have required the trailer's prompt return." Lopez Defs.' Resp. 8. This is evidence of failure to "tak[e] steps to prevent"; more is required to make a showing of implied permission. *Globe Indem. Co.*, 382 S.W.2d at 774.

Plaintiff, on the other hand, has presented evidence that demonstrates that Munoz and Franceware did not have implied permission to use a Goal trailer. For example, Rosalinda Vigil, a Goal employee, testified that that Goal and Trans Front arranged for Trans Front to use a Goal trailer to transport a shipment to the Trans Front facility in Juarez and then return the empty trailer to Goal's facility within 24 hours, which indicates that Moore Freight had no license to haul the trailer from the Trans Front lot to Mitchell County, Texas. App. to Pl.'s Mot., ECF No. 79–1, Ex. B., "Vigil Dep." at 32:6–40:15. Andres Sotelo, a partial owner of Trans Front, testified that the use of a Goal trailer to transport a load for another company, Moore Freight, at the time of the fatal accident was purely accidental. App. to Pl.'s Mot., ECF No. 79–1, Ex. C., "Sotelo Dep." at 24:17–25:9. ("The driver picked up the wrong trailer and loaded the wrong trailer."). And, crucially here, Sotelo testified that there were "no" occasions where Goal's trailers were used "for these types of loads[,]" meaning Moore Freight loads. Sotelo Dep. 28:20–22. These uncontroverted facts fatally undermine the notion that any course of conduct or relationship where there is mutual ac-

quiescence or lack of objection signifying consent to use to a Goal trailer might be inferred from the parties' dealings. *Royal Indent. Co.*, 399 S.W.2d at 345.

Further still, the Fifth Circuit has identified a list of factors relevant to the determination of whether an employer has granted an employee permission to use a vehicle, including: the driver's understanding based on his own prior usage; the type of usage of other drivers allowed by the company without objection; the employer's failure to articulate limitations on use in the face of knowledge of employee's personal use; express policies or rules issued by the company; employee's knowledge of company policies or rules and any pledge extracted from an employee in exchange for use of the vehicle; whether the employee ever asked for permission for personal use and the response to that request; the employer's knowledge of likely use of the vehicles and failure to protest it; the employer's failure to question employees about their usage of the vehicles; and the employer's participation in non-business events with knowledge that the employee's transportation to the event was by way of the company vehicle. *Liberty Mutual Ins. Co. v. Graham*, 473 F.3d 596, 603-04 (5th Cir. 2006).

The parties did not analyze the implied permission question using these factors, and the Court forgoes an exhaustive analysis of these factors in favor of simply noting that it sees no single factor that militates for a finding of implied permission on the evidence before it. For the foregoing reasons, the Court is not convinced that Defendants have demonstrated any "usage or practice of the parties" that signifies implied permission and accordingly finds that none exists here. *Royal Indem. Co.*, 399 S.W.2d at 345.

### c. Minor deviation rule

As explained above, the Court is not persuaded that any permission, express or implied, exists in this case, even while setting aside any consideration of the minor deviation rule. Nevertheless, the Court now undertakes an analysis of the minor deviation rule for the sake of completeness, assuming solely for the sake of the argument that implied permission may have existed in this case. Plaintiff argues that the use of the Goal trailer by non-Goal drivers on a trip unrelated to Goal's business interests was a material deviation from any express or implied permission that might have existed. Pl.'s Reply 3–7. Defendants do not address the question of whether a deviation from any permitted use was "minor" or "material." *See generally* Lopez Defs.' Resp.; Munoz Defs.' Resp.

The Texas Supreme Court adopted the so-called "minor deviation" rule in 1968, writing that one may deviate from the permitted use of an insured vehicle and still be covered under an omnibus provision:

> if the use is not a material or gross violation of the terms of the initial permission. Under this rule, the court must determine in each instance—taking into account the extent of deviation in actual distance or time, the purposes for which the vehicle was given, and other factors—whether the deviation was "minor" or "material."

*Coronado*, 596 S.W.2d at 504.

In *Coronado*, an employee of an oil well service business used a company vehicle to travel to a bar about three or four miles from the company work site and later adjourned to another bar variously described as "nearby" and "some distance" away. *Id.* at 502. After leaving the second bar "sometime after midnight," the employee was involved in a car accident while driving the company vehicle. *Id.* A jury found that that the employee was using the company vehicle with his employer's permission, but

the trial court set the finding aside. *Id.* at 505. The court of appeals affirmed the trial court, and the Texas Supreme Court affirmed the court of appeals, holding:

> [T]he eight hour deviation engaged in by [the employee] was so gross as to be a material deviation *as a matter of law.* The use of the vehicle at the time of the accident was so far outside the scope of the permission granted ... that we cannot say that a fact issue is raised that his employer had impliedly consented to this use.

*Id* at 506. (emphasis added)

*Coronado* recognizes three categories of deviations: first, deviations so trifling that no fact issue is raised as to whether permission was destroyed; second, deviations of enough significance to present a genuine question of fact; and finally, deviations that are so material as to destroy any initial permission as a matter of law. *See id.* Ultimately, the Texas Supreme Court found an eight-hour deviation in time and a deviation potentially as small as three or four miles in distance from the zone of permitted use of a vehicle to be so "gross," or "material," that it destroyed any permission to use the vehicle which may have otherwise impliedly existed. *Id.*

Here, at the time of the fatal collision, the trailer was in use in Mitchell County, Texas, hundreds of miles from the El Paso–Juarez area, more than three weeks after it was intended to be returned to the Goal facility. *See* Order of September 4, 2014, at 2–4, ECF No. 77, *Canal Insurance Co. v. XMEX Transport, LLC, et al,* No. EP–13–CV–156–KC. Following the rubric from *Coronado,* there was clearly a material deviation in this case. While a four-mile deviation in distance, an eight-hour deviation in time, and a deviation in business purpose was found to be a material deviation in *Coronado,* here the deviation of hundreds of miles and several weeks from any conceivable permission was most certainly material as well. *See Coronado,* 596 S.W.2d at 506.

Other courts have followed the *Coronado* template and found that deviations in time and use that are small compared to those at issue here are material deviations as a matter of law. *See Acceptance Indem. Ins. Co. v. Pennington,* No. 1:06-CV-0257, 2007 WL 1481036, at *5 (E.D. Tex. May 18, 2007) (holding that driving fifty miles outside the zone of permitted use to visit a casino was a material deviation as a matter of law); *Old Am. Cty. Mut. Fire Ins. Co. v. Renfrow,* 130 S.W.3d 70, 73 (Tex. 2004) (holding that using a company vehicle to travel forty miles to visit a girlfriend overnight was a material deviation as a matter of law); *Atkinson v. Snodgrass,* No. 11-05-00011-CV, 2006 WL 648334, at *5 (Tex. App. Mar. 16, 2006) (holding that driving a company vehicle at least thirty miles out of the zone of permitted use on a personal errand with no accompanying deviation in the permitted time of use was a material deviation as a matter of law); *James v. Vigilant Ins. Co.,* 674 S.W.2d 925, 928 (Tex. App. 1984) (holding that driving a company vehicle at least thirty miles out of the zone of permitted use on a personal errand with no accompanying deviation in the permitted time of use was a material deviation as a matter of law). Bearing in mind the deviation in this matter, the conclusion that the use here was at least as far outside the scope of any permitted use in the cases mentioned above is inescapable. *See Pennington,* 2007 WL 1481036, at *5; *Renfrow,* 130 S.W.3d at 73; *Coronado,* 596 S.W.2d at 504; *Atkinson,* 2006 WL 648334, at *5; *James,* 674 S.W.2d at 928. Therefore, the Court finds that the deviation from any potentially permitted use of the trailer was "material," thus vitiating even the theoretical implied permission that the Court assumed may have existed for the purpose of argument here. *Coronado,* 596 S.W.2d at 502–506.

### 3. Federal motor carrier safety regulations do not preclude summary judgment

The Lopez Defendants contend that federal regulations dictate that lessees of trailers like Goal are "completely responsible" for any negligent use of the trailer, regardless of whether the driver had permission to haul the trailer or whether Goal had any knowledge of the trailer's whereabouts at the time of the fatal collision. Lopez Defs.'Resp. 12–13. Plaintiff responds that the "Motor Carrier Act" has no applicability here and that no coverage can exist because no judgment was rendered against Goal in the first place. Pl.'s Reply 8–9. The parties' briefing on the regulatory questions was notably terse, spanning no more than a couple of pages of argument on either side. *See* Lopez Defs.' Resp. 12–13; Pl.'s Reply 8–9.

The regulations that the Lopez Defendants invoke are known as the Federal Motor Carrier Safety Regulations ("the Regulations"). *See* 49 C.F.R §§ 350–399. The Fifth Circuit has explained that the purpose of the Regulations, as applicable here, is to ensure that motor carrier lessees of equipment used in interstate commerce take responsibility for and maintain control of leased equipment during the term of the lease. *See Jackson v. O'Shields*, 101 F.3d 1083, 1086 (5th Cir. 1996); *see also* 49 C.F.R. § 376.12(c)(1). Along those lines, under certain circumstances, lessees may be "held vicariously *liable* for injuries resulting from the use of the leased equipment." *Id.* (emphasis added).

This Court is not adjudicating Goal's *liability* in this case. Though it was a named defendant in the underlying state-court proceeding, a jury found that Goal was not liable for injuries suffered by Defendants' family members. See J. Correcting J. Signed June 3, 2014 at 2, First Am. Compl. for Declaratory J. Ex. B. Now, this Court is charged only with determining Plaintiff's duties and obligations under the policy issued to Goal. *See Canutillo*, 99 F.3d at 701. Perhaps Defendants' arguments about the Regulations should have been raised in state court to impute liability to Goal. But arguments for negligence or statutory liability are outside the scope of this inquiry, which engages the precise question of whether the Munoz and Lopez Defendants are "insureds" under the insurance policy that Plaintiff issued to Goal. *See id.* Accordingly, the Court declines to impose liability on Goal here and considers this argument no further.

## II. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 78, is hereby **GRANTED**.

The Court is aware that Defendants have filed counterclaims in this case though it believes those counterclaims to be mooted by virtue of this Order and the Court's March 18, 2016, order granting summary judgment for Plaintiff as to the duty to defend, and denying such to Defendants.

Because the Court has found that Plaintiff has no duty to defend Defendants nor to indemnify them, nor otherwise be found liable for Defendants' negligence, the Court **ORDERS** the parties to inform the Court whether there are any remaining issues in Defendants' counterclaims to be litigated.

Defendants shall file a Brief on this issue on or before March 21, 2017. Plaintiff shall respond, if necessary, on order before March 28, 2017.

**IT IS FURTHER ORDERED** that the Court's Trial Preparation Order of July 11, 2016, ECF No. 70, is hereby **VACATED**. The trial and all related deadlines are hereby **CANCELLED**. The Court shall

reset the case for trial only upon a determination that triable issues of fact remain based on Defendants' counterclaims.

**SO ORDERED.**