## ROYAL INDEMNITY COMPANY, Petitioner,

v.

## H. E. ABBOTT & SONS, INC., Respondent.

### No. A-11001.

Supreme Court of Texas.

Feb. 9, 1966.

Upton, Upton, Griffis, Shannon & Porter, James D. Johnson, San Angelo, with above firm, for petitioner.

Blanks, Thigpin, Logan, Steib & Lewis, S. Ancial Middlebrook, San Angelo, with above firm, for respondent.

WALKER, Justice.

A 1961 pickup truck owned by Jack Herring and driven by George K. Landers ran into and damaged a building owned by plaintiff, H. E. Abbott & Sons, Inc. The truck was covered by a liability insurance policy issued by Royal Indemnity Company to Herring, and the policy contains an omnibus clause extending the coverage to anyone using the vehicle with the permission of the named insured. After recovering judgment against Landers for the damage to the building, plaintiff instituted the present suit against Royal Indemnity Company, defendant, to enforce its alleged liability under the policy.

The case turns upon whether Landers was using the truck with the permission of Herring so as to be an omnibus insured. There is no contention that he had express permission, but the jury found that Landers was operating the vehicle with Herring's implied permission. Judgment was rendered on the verdict in plaintiff's favor, and the Court of Civil Appeals affirmed. 392 S.W.2d 359. In our opinion there is no evidence to support the jury's finding.

On April 18, 1963, Herring employed Landers to work on the former's ranch located some 14 miles northwest of Ballinger. Herring inquired at the time whether Landers had a driver's license, and he did. Landers was paid a monthly salary plus his room and board, and lived in a small house on the ranch. The original arrangement contemplated that he would prepare his meals in the house where he lived, but he soon began taking his meals with the Herring family in the main ranch house. He often prepared his meals there when the Herrings were not at home.

Herring owned three vehicles: a 1955 pickup truck, which was unlicensed and intended for use only on the ranch premises, the 1961 pickup truck, and a passenger car. Landers had permission to drive the 1955 pickup on the ranch. He customarily used it in connection with his work there, and the 1961 pickup was ordinarily driven by Herring. Landers was authorized to use the 1961 truck to perform his duties on the ranch, however, if Herring was not using it and the 1955 pickup was out of repair. When the trucks were not in use, the 1961 pickup was parked behind the Herring house, the 1955 pickup was usually left near the barn, and the keys were customarily left in both vehicles.

On Saturday afternoon, July 27, 1963, Herring and Landers attended the horse races in Bronte. They made the trip to-

gether in one of Herring's vehicles, and Herring did all the driving. Each had two bottles of beer while they were in Bronte, and they returned to the ranch about 3:00 or 4:00 in the afternoon. Later in the afternoon Herring and his family left the ranch and went to Big Spring to spend the night with friends.

Landers had told Herring that he expected a friend, who lived in Abilene and had an automobile, to pick him up at the ranch that evening and drive him to San Angelo, but these plans evidently did not materialize. At about 7:30 o'clock and during the absence of Herring and his family, Landers left the ranch in the 1961 pickup and drove to San Angelo on a personal errand. It was on this trip that he lost control of the vehicle and ran into plaintiff's building. He stopped and drank more beer on the way to San Angelo, and immediately after the accident was arrested and placed in jail but was released upon posting a cash bond, which was forfeited.

Upon learning of the accident the following day, Herring went to see Landers and "threatened to beat the stuffing out of him," but Landers talked him out of it. He also told Landers that he might file charges, that "I believe you know better than that," and that Landers had "better not do it again." Although plaintiff argues to the contrary, we think it is clear from the evidence that these statements had reference to Landers' use of the truck on the previous day. The damage to the pickup was about $400.00, and Landers begged Herring to allow him to stay on the ranch and work it out. Herring later agreed for Landers to remain on those terms, and Landers continued to work on the ranch for about nine months. His relations with Herring were cordial during that period.

On three or four occasions prior to the accident, Landers had driven one of the vehicles off the ranch to pick up the Herring children at a school bus stop some five miles from the ranch house. Part of this distance was over a private road and part over a public highway. These are the only times Landers had driven a vehicle off the ranch, and on each occasion he was expressly instructed by Herring to pick up the children. Herring had never told him not to use the vehicles off the ranch. The subject had not come up. Landers had no car of his own, and Herring always took him to town whenever Landers wanted to go.

Under the standard omnibus clause of an automobile liability policy, an operator is entitled to protection as an additional insured if his use of the vehicle is with either the express or the implied permission of the named insured. While express permission must be affirmatively stated, implied permission may be inferred from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent. It is usually shown by usage and practice of the parties over a period of time preceding the occasion on which the automobile was being used. 7 Appleman, Insurance Law and Practice, § 4365.

The following definition was given as a part of the charge in the present case:

> " 'Implied permission,' as used in this charge, means permission that is not expressly given or stated in words, and the word 'implied' means inferential or tacitly conceded and involves an inference arising from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection under the circumstances, signifying assent, and 'implied permission' is not confined alone to affirmative action."

Plaintiff argues that implied permission can be inferred here in view of the relationship between Herring and Landers, which was more than that of a mere employer and employee, the express permission given Landers to use the trucks on the ranch, the availability of the vehicles, the distance of the ranch from town, Landers'

obvious need for a means of transportation to go there for entertainment or other purposes, Herring's inquiry as to whether Landers had a driver's license, and his failure to instruct Landers not to use the vehicles off the ranch. Defendant cites two decisions involving somewhat analogous facts.

In Kitchenmaster v. Mutual Automobile Ins. Co., 248 Wis. 554, 22 N.W.2d 479, the driver was Funk, who worked for Bishop as a farm laborer. Funk had no driver's license and had never received specific permission to use Bishop's truck, although he had done so on the farm without objection from Bishop. On one occasion Bishop had requested Funk to drive Mrs. Bishop to town, and on several other occasions Funk drove Mrs. Bishop to the country store with Bishop's knowledge. At no other time had Funk driven the truck on the highway. While Bishop and his wife were away from the farm, Funk used the truck for a personal errand and had an accident. In upholding a directed verdict for the insurer the Supreme Court of Wisconsin said:

"The mere tacit consent to drive the truck about the farm, without using the public highway, would certainly not operate as a consent to the use of the truck by Funk upon the public highway. On the few occasions when Funk was permitted to drive the truck he was accompanied by Mrs. Bishop and was operating under specific directions applicable to a particular trip. He never had any specific general permission to drive the truck upon the highway for his own purposes, or, indeed, for purposes connected with the farm. Since Funk had never driven the truck on the highway except as above indicated, there is no basis for inferring a tacit permission, based upon Bishop's knowledge of Funk's practices."

Plaintiff insists that *Kitchenmaster* is not in point because Funk had no driver's license. It argues that an owner could not be expected to permit an unlicensed opera-

tor to drive on the public highway, but the case cannot be distinguished on that basis. The fact that Funk had no license would not negate consent as a matter of law when Bishop had even entrusted his wife's safety on the public highway to such unlicensed driver.

In United States Fidelity & Guaranty Co. v. Brann, 297 Ky. 381, 180 S.W.2d 102, the relationship between the insured owner of the truck, Hopper, and the operator of the vehicle, Gaylor, was similar in some respects to that existing between Herring and Landers. Hopper operated a grocery store and employed Gaylor as a delivery boy. Gaylor occasionally slept and took his meals in the Hopper home, which was an apartment above the grocery. The truck was kept in a garage on the premises, and the keys were kept in the store where they were obtained by Gaylor for use of the truck in the business. On Sunday morning Hopper sent Gaylor out in the truck to pick up some young men for a Sunday School class taught by Hopper. Gaylor kept the keys in his pocket when he returned from this errand. After eating the noon meal with the Hopper family and during Hopper's absence, he went for a drive in the truck and had an accident. Hopper did not reprimand Gaylor, but visited him in the hospital, allowed him to stay in the apartment for a few days following his dismissal, and became surety on a note for his hospital and doctors bills. Gaylor had not previously used the vehicle for his own purposes, and had never requested permission to do so. It was held that the evidence did not raise an issue of implied permission, and the court observed that Gaylor could not be regarded as a member of Hopper's household. We note that both Hopper and Gaylor testified the latter had no permission to use the truck on the occasion in question, but their testimony in this respect would not be controlling if implied permission could reasonably be inferred from the other facts and circumstances.

Plaintiff relies on cases such as Truck Insurance Exchange v. Ballard, Tex.Civ.

App., 343 S.W.2d 953 (wr. ref. n. r. e.), Employers Mutual Casualty Co. of Des Moines v. Mosqueda, 5th Cir., 317 F.2d 609, and General Casualty Co. of America v. Woodby, 6th Cir., 238 F.2d 452, in each of which the insurance carrier was held liable under its policy. None of these decisions is persuasive here. In *Ballard* there was proof of a business custom tending to establish implied permission, and in *Mosqueda* the court found support for the jury's verdict in the driver's log covering the particular trip and in evidence of a prior course of dealing between the named insured and the driver. The basic issue in *Woodby* was whether an employee of the insured was authorized to permit the operator to use the vehicle.

In the present case the evidence shows neither a relationship nor a prior course of conduct from which implied permission might fairly be inferred. Landers was employed as a ranch hand. He had never driven one of the vehicles off the ranch except when specifically instructed to do so, and had never used any of them for a personal errand. His employer had always driven him to town whenever he wanted to go, and had no reason to believe that he intended or might need to use one of the vehicles on the evening of the accident. In view of these undisputed facts, the limited privileges Landers was allowed in the Herring house, his occasional pleasure trips with Herring, the availability of the vehicles, his use of the same on the ranch, Herring's inquiry about his driver's license, and the absence of any prior instruction not to take the vehicles off the ranch, afford no basis for concluding that Landers had implied permission to use the truck for a trip to San Angelo on a personal mission. We hold that there is no evidence to support a finding that the vehicle was being operated with the implied permission of the named insured.

The judgments of the courts below are reversed, and judgment is here rendered that plaintiff take nothing.