IN THE SUPREME COURT
OF TEXAS

 

════════════

No. 02-1087

════════════

 

Old American County Mutual

Fire Insurance Company,
Petitioner,

 

v.

 

Michael D. Renfrow, et al.,
Respondents

 

════════════════════════════════════════════════════

On Petition for
Review from the

Court of
Appeals for the Second District of Texas

════════════════════════════════════════════════════

 

 

PER CURIAM

 

 

This is a declaratory judgment action to determine
coverage under the Aomnibus
clause@[1]
of a commercial auto liability policy that insured an employer and Aanyone else while using with your [that
is, the employer=s]
permission a covered auto@.  The principal issue is whether an employee
had implied permission to use a company truck at the
time of an accident so as to be covered by the policy.  The trial court held as a matter of law that
the employee was covered, but the court of appeals reversed and remanded for a
resolution of subsisting fact issues.[2]  We hold that the employee, as a matter of law,  materially deviated
from any use he was permitted to make of the truck and therefore was not
covered by the company policy.

In early 1999, Michael Renfrow
worked for CD Consulting & Operating Co., an oil field services business
located in Bridgeport, Texas, a town of about 4,000 at that time, northwest of
Fort Worth.  One Friday evening about 7
p.m., Renfrow returned from working at a well site
near Justin, some thirty miles west of Bridgeport, finished his paperwork, and
left CD Consulting=s office
for the day.  Although Renfrow=s
personal truck was parked at the office, Bobby Campbell, CD Consulting=s owner, let Renfrow
take a company truck home, which was about half a mile away.  Campbell
would later testify that this was because Renfrow was
due back at the well site at 6:00 a.m.
the next day, and it was company policy to let an employee take a company truck
home overnight when he had to be at a well site early the next morning.  It is not entirely clear whether Renfrow knew of any such policy, and that Friday night he
and Campbell did not specifically discuss what he could or could not do with
the company truck.  But Renfrow freely admits that he knew as a rule employees were
not allowed to use company vehicles for personal business, this despite the
fact that he was in the habit of driving a company truck to the home of his
foreman, Jimmy Joe Stinnett, several nights a week to drink beer.  Stinnett also lived in Bridgeport,
not far from Renfrow.

Renfrow often drove a
company truck to visit Mili Jo Roberts, too, and that
is where he went when he left the office on the Friday night in question.  Roberts lived in Bridgeport
about a mile from CD Consulting=s
office.  Sometime during the evening, Renfrow and Roberts decided to go to Saginaw,
a suburb of Fort Worth, about forty
miles away.  Renfrow
would later testify repeatedly and consistently that he knew he did not have
permission to take the company truck to Roberts=
home, let alone to Saginaw.  Renfrow and Roberts
were returning about 12:45 a.m. when
the truck left the highway and hit an embankment.  Roberts was killed and Renfrow
was injured.  Renfrow
was later indicted by a Wise County
grand jury for intoxication manslaughter.[3]

Roberts= beneficiaries sued Renfrow
and CD Consulting for wrongful death. 
The jury found Renfrow negligent and grossly
negligent, but did not find CD Consulting directly or vicariously liable.  The trial court rendered judgment against Renfrow, and he did not appeal.

Old American, CD Consulting=s
insurer, sued for a declaration that Renfrow was not covered
by its policy because he lacked permission to drive the company truck to Saginaw
on personal business.  The Roberts
beneficiaries counterclaimed for payment of their judgment against Renfrow.  Both sides
moved for summary judgment, and the trial court granted the beneficiaries= motion and denied Old American=s. 
The court of appeals reversed and remanded, concluding that while Renfrow unquestionably did not have express permission to
take the company truck to Saginaw, evidence of whether he had implied
permission was in dispute, thus precluding summary judgment for either side.[4]

The Roberts beneficiaries argue, and the court of
appeals agreed, that Renfrow=s
frequent use of a company truck to go to his foreman=s
and Roberts=
homes was some evidence that he had implied permission to take the truck on
personal business.  But, there is no
evidence to suggest that Renfrow ever used a company
vehicle on personal business outside Bridgeport
or had implied permission to do so.

The rule in Texas,
stated in Coronado v. Employers=
National Insurance Co.,[5]
is that a person may deviate from the permitted usage of an insured vehicle and
still be covered under an omnibus provision

 

if
the use is not a material or gross violation of the terms of the initial
permission.  Under this rule, the court
must determine in each instance C taking into account the extent of
deviation in actual distance or time, the purposes for which the vehicle was
given, and other factors C
whether the deviation was Aminor@ or Amaterial.@[6]

 

A deviation can be material as a matter of law, as it was in Coronado.  In that case, one Sotelo,
an employee of an oil well service business, was taking three of his crew
members home late one afternoon in a company pickup when they decided to go to
a bar about three or four miles out of their way.  There they stayed for three or four hours
before adjourning to another bar not far away. 
They left the second bar Asometime
after midnight, apparently many beers
after leaving the company yard@
and were involved in an accident.[7]  A jury found that Sotelo
was using the company pickup within the scope of his employer=s permission, but the trial court set
the finding aside, and the court of appeals affirmed.[8]  We agreed, holding that

 

the
eight hour deviation engaged in by Sotelo was so
gross as to be a material deviation as a matter of law.  The use of the vehicle at the time of the
accident was so far outside the scope of the permission granted Sotelo for use of the vehicle that we cannot say that a
fact issue is raised that his employer had impliedly consented to this use.[9]

 

Similarly, in Royal Indemnity Co. v. H.E.
Abbott & Sons, Inc.,[10]
Herring, a ranch owner, provided two pickups for his employee, Landers, to use
on the ranch.  On several occasions,
however, Herring and Landers had taken personal trips off the ranch in one of
the pickups, and Landers had sometimes driven off the premises to pick up
Herring=s
children at a school bus stop about five miles away.  One evening, however, Landers drove a little
over thirty miles to San Angelo on
a personal errand and had an accident shortly after he arrived.  A jury found that Landers was using the truck
with Herring=s
permission, but we held that

 

the
evidence shows neither a relationship nor a prior course of conduct from which
implied permission might fairly be inferred. 
Landers . . . had never driven one of
the vehicles off the ranch except when specifically instructed to do so, and
had never used any of them for a personal errand.  His employer had always driven him to town
whenever he wanted to go, and had no reason to believe that he intended or
might need to use one of the vehicles on the evening of the accident.  In view of these undisputed facts, the
limited privileges Landers was allowed in the Herring house, his occasional
pleasure trips with Herring, the availability of the vehicles, his use of the
same on the ranch, Herring=s inquiry about his driver=s
license, and the absence of any prior instruction not to take the vehicles off
the ranch, afford no basis for concluding that Landers had implied permission
to use the truck for a trip to San Angelo on a personal mission.  We hold that there is no evidence to support
a finding that the vehicle was being operated with the implied permission of
the named insured.[11]

 

Likewise, we think Renfrow=s trip to Saginaw
was, as a matter of law, a material deviation from any implied permission he
may have had to use the vehicle in Bridgeport.  Renfrow=s trip was a diversion similar to the employees=
trips in Coronado or Royal Indemnity, and it was at least as far
outside the scope of any permitted use.  

The Roberts beneficiaries complain that the trial
court erred by excluding from the summary judgment evidence Renfrow=s late-filed affidavit, which states in
full:  

 

My name is MICHAEL D.
RENFROW.  I am over the age of 18 years,
and am competent to make this affidavit. 


 

I had permission to take
the vehicle on the day in question.  Any
statement made  to
the contrary, whether taken at the time of trial or otherwise, is taken out of
context or incorrect or otherwise is a mistake.

 

Assuming the affidavit should not have been excluded, the error
was harmless.  No one disputes that Renfrow had express permission to take the vehicle to his
home, and we have assumed he had implied permission to take it to Roberts= home. 
The affidavit does not suggest that he had permission to take it as far
away as Saginaw.  The affidavit adds nothing.

Accordingly, we grant Old American=s petition for review and without
hearing oral argument,[12]
reverse the court of appeals=
judgment and render judgment for Old American.

 

Opinion delivered: February
 13, 2004

 











[1] An omnibus clause is a Aprovision
in an automobile-insurance policy that extends coverage to all drivers
operating the insured vehicle with the owner=s
permission.@  Black=s Law Dictionary 1116 (7th Ed. 1999).





[2] 90 S.W.3d 810 (Tex. App.CFort Worth 2002).





[3] See Tex.
Penal Code ' 49.08.





[4] 90 S.W.3d at 818.





[5] 596 S.W.2d 502 (Tex. 1980).





[6] Id. at 504. 





[7] Id. at 503.





[8] Id.





[9] Id. at 506.





[10] 399 S.W.2d 343 (Tex. 1966).





[11] Id. at 347.





[12] Tex. R. App. P.
59.1.