**Khanh DAO, Appellant.**

v.

**Elissa GARCIA, on Behalf of the Estate of Rojelio Salinas Jr., and Rojelio Salinas Sr., Appellees**

**No. 05–14–01451–CV**

Court of Appeals of Texas, Dallas.

Opinion Filed January 14, 2016

Rehearing Overruled March 14, 2016

---

4. We also note that no motion to enter judgment was filed by any party.

Tiffany Au, Meloney Cargil Perry, Stacy Ann Hemby Thompson, Dallas, TX, for appellants

Lorien Whyte, San Antonio, TX, Daniel W. McDonald, Preston Dugas III, Fort Worth, TX, for appellees.

Before Justices Lang–Miers, Brown, and Schenck

## MEMORANDUM OPINION

Opinion by Justice Lang–Miers

Tim Parks borrowed appellant Khahn Dao's car to pick up a friend at a restaurant. As Parks and his friend drove away from the restaurant, they collided with Rojelio Salinas Jr. Mr. Salinas died from the injuries he sustained in the collision. Appellees Elissa Garcia, on behalf of the estate of Rojelio Salinas Jr., and Rojelio Salinas Sr. sued Parks, appellant, Komali Restaurant, LLC, and Lien Nguyen. After a jury trial and verdict in appellees' favor, the trial court entered a judgment of joint and several liability against appellant and Parks.

In two issues on appeal, appellant argues that appellees did not present legally sufficient evidence to support a finding of negligent entrustment against her and that the trial court erred in apportioning responsibility to appellant under direct and derivative liability and in imposing joint and several liability on appellant. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2 (a), 47.4. We affirm.

### BACKGROUND

Appellant and Tim Parks were business associates, friends, and former roommates. One evening, after completing her work day, appellant went to Parks's apartment, where she had dinner with Parks and then fell asleep. While appellant slept, Parks

took appellant's car keys and drove appellant's car to pick up a friend at a nearby restaurant, Komali Restaurant, LLC. While waiting for his friend at Komali, Parks drank part of a glass of wine. Parks testified that he consumed numerous glasses of wine that day, beginning in the early afternoon. Parks and his friend left Komali and drove out of Komali's parking lot and initially began to turn the wrong way on a one-way street. Parks then tried to drive across the street to enter a driveway. Rojelio Salinas Jr. was driving a moped down that street and Parks collided with Mr. Salinas. Mr. Salinas died from his injuries.

Appellees filed suit against appellant, Parks, and Komali asserting negligence claims, including the claim that appellant negligently entrusted her car to Parks.[1] After trial, a jury found appellant, Parks, and Komali negligent and awarded appellees $737,000 in damages. The jury apportioned ten percent of the responsibility to appellant, five percent to Komali, and eighty-five percent to Parks. Komali settled with appellees prior to the entry of judgment. The court then rendered judgment for appellees and ordered that appellees recover from appellant and Parks, jointly and severally, the remaining $700,150 in damages, plus interest and costs. Appellant filed a motion for new trial or to reform the final judgment, which was overruled by operation of law. She then brought this appeal.

## LEGAL SUFFICIENCY

In her first issue, appellant argues that the evidence is not legally sufficient to support the jury finding that appellant negligently entrusted her car to Parks. To establish liability for negligent entrust-

ment, appellees must show that (1) appellant entrusted her car to Parks, (2) Parks was an unlicensed, incompetent, or reckless driver, (3) at the time of the entrustment, appellant knew or should have known that Parks was an unlicensed, incompetent, or reckless driver, (4) Parks was negligent on the occasion in question, and (5) Parks's negligence proximately caused the collision. *See Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 758 (Tex.2007). Appellant argues that there is no legally sufficient evidence to support the jury's findings on two elements: (1) that appellant entrusted her car to Parks and (2) that, at the time of the alleged entrustment, appellant knew or should have known that Parks was unlicensed, incompetent, or reckless.

## Standard of Review

■ When an appellant attacks the legal sufficiency of an adverse finding on an issue on which the appellant did not have the burden of proof, the appellant must demonstrate that there is no evidence to support the adverse finding. *See Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex.2011). We will sustain a no-evidence challenge on appeal if the record shows (1) a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of the vital fact. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex.2011). "Evidence is legally sufficient if it 'would enable reasonable and fair-minded people to reach the verdict under review.'" *Exxon Corp.*, 348

---

1. Appellees also filed suit against Lien Nguyen. Nguyen, Parks, and Komali are not parties to this appeal.

S.W.3d at 215 (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005)).

In conducting our review, we examine the evidence in the light most favorable to the jury's verdict. *City of Keller*, 168 S.W.3d at 822. We must assume that the jury resolved conflicting evidence and made reasonable inferences from the evidence in favor of the prevailing party. *Id.* at 821.

The jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and it is improper to substitute our judgment for the jury's simply because we may disagree with its findings. *Id.* at 819. The jury may choose to believe one witness and disbelieve another. *Id.* We must assume jurors decided all credibility questions in favor of the verdict if reasonable people could do so. *Id.*

### Whether Appellant Entrusted Her Car to Parks

■ Appellant argues that there is no evidence that she entrusted her car to Parks, contending that there is no evidence that she gave Parks either express or implied permission to use her car. Express permission is "affirmatively stated," while "implied permission may be inferred from a course of conduct or relationship between the parties in which there is mutual acquiescence or lack of objection signifying consent." *Royal Indem. Co. v. H.E. Abbott & Sons, Inc.*, 399 S.W.2d 343, 345 (Tex.1966). Implied permission "is usually shown by usage and practice of the parties

over a period of time preceding the occasion on which the automobile was being used." *Id.* Because of our conclusion regarding implied permission, we need not consider appellant's arguments concerning express permission.

### Implied Permission: Arguments of the Parties

Appellant argues that the evidence of implied permission is not sufficient as a matter of law. Appellant contends that the evidence appellees presented included that she and Parks were friends, that she allowed Parks to use her car on a "handful of occasions" "for specific business purposes[,]" and that Parks had access to the car that evening.[2]

Appellees argue that there was more than a scintilla of evidence that appellant entrusted her car to Parks based on evidence of "a pattern of Dao lending her vehicle to Parks[,]" of a "very close" relationship between appellant and Parks, and that Parks's use of appellant's car was "not limited to just business purposes as Dao argues." Appellees contend that the jury could choose to believe Parks's testimony that appellant allowed Parks to drive her car for personal use and not just for business-related purposes.

### Discussion

■ Although the witnesses differed about how often and the circumstances when Parks drove appellant's car, we agree with appellees that there is legally

---

**2.** In her reply brief, appellant first raises the argument that "Dao did not give implied permission to Parks to drive the vehicle while intoxicated." In her original brief, appellant did not raise the issue of whether or how Parks's intoxication affects the determination of whether he had implied consent to use appellant's car that evening. Also in her reply brief, appellant first raises the argument that, even if the evidence establishes that Parks had permission to use her vehicle for personal reasons, "meeting a friend for a drink" was outside of the limited scope of permitted personal use. "[W]e do not consider arguments raised for the first time in a reply brief." *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 803 n. 5 (Tex.App.–Dallas 2011, no pet.).

sufficient evidence that Parks had appellant's implied consent to drive her car.

Appellant testified that Parks drove her car on "very specific" and "rare" occasions when she needed him to use the car for "a specific task during work[.]" She testified that "it's not a free-for-all, take it when you need it; it's very specific" and that Parks did not have her permission to use her vehicle "whenever he wanted[.]" She also testified that she had "denied him use of [her] vehicle" "many times[.]" Appellant testified that she and Parks had not discussed his driving her car on the night of the collision, Parks had not asked her if he could drive her car that night, and she did not know that he had taken her car. She testified that her car key was in her purse on the dining table that night. She also testified that she and Parks had previously been roommates for two years, and that they were "employer/employee, friends, roommates," but were never romantically involved.

Parks testified that he drove the car "very rarely" and "a few times, when I needed to go get something that I needed the car for." He could not "remember specifically" when he drove it and why he needed the car, but testified, "It would be something that I would need the car for which was very rare." When asked if appellant would let him use the car if he needed the car and he asked her, he replied, "I guess. Yes." Later he testified that "bottom line," if he "needed the vehicle[,]" he "could use it." Although Parks initially testified that there was an instance when appellant did not let him use the car when he asked to use it, he could not remember the specific incident. He also testified that, on the night of the collision, he took the car without asking appellant. Additionally, Parks testified that he and appellant had been roommates for about two years and were close friends

who would see each other "on a daily basis[.]"

Jeffrey Dickey, a friend of Parks who was a passenger in the car at the time of the collision, testified that for "the longest time," Parks "never" drove a car but then, near the time of the collision, he drove appellant's car "[m]aybe once a week." Dickey testified that he did not "know how many times really" he saw Parks driving appellant's car, he "wouldn't presume" that Parks drove appellant's car often, and he did not know "the circumstances under which Mr. Parks would have been using Ms. Dao's car[.]" Dickey also testified that appellant and Parks were close friends who had lived together and that appellant "always had some form of belonging" at Parks's residence and "[i]t appeared always to be a secondary residence."

Appellant relies on four cases to establish that the evidence of entrustment is not legally sufficient. All four are distinguishable. In *Soodeen v. Rychel*, 802 S.W.2d 361, 361 (Tex.App.–Houston [1st Dist.] 1990, writ denied), Soodeen suffered injuries from a collision between his car and Rychel's car, which was being driven by either Angela Fontenot or Diana (Dina) Thomas. The trial court granted summary judgment to Rychel on Soodeen's negligent entrustment claim. *Id.* at 362. Rychel testified that Fontenot asked him if he could drive her to Houston and he replied that he could take her later that night after he coached a football game. *Id.* He told her she could sit in his car while waiting for him, and he unlocked one of his car doors to enable her to do so. When Rychel returned from the game, he discovered that his car was gone. *Id.* Later that evening, Fontenot called to tell him that she had been in a collision while driving his car. *Id.* On appeal, Soodeen argued that a fact finder might infer that

Rychel gave Fontenot or Thomas consent to drive his car from his deposition testimony that he socialized with Fontenot during the year preceding the collision and visited her apartment approximately twenty times, he let her sit in his car while waiting for him and unlocked the car to enable her to do so, he left an extra ignition key hidden in the car and admitted that a key was found in the car ignition after the collision, and he did not file theft charges against Fontenot when he discovered that his car was missing and suspected that she took it. *Id.* at 363. The court disagreed and concluded that these "facts" did not provide the basis for an inference that Rychel consented for Fontenot to operate his car. *Id.* The court noted that Rychel's testimony reflected "an unwavering denial of consent for either woman to drive his car[,]" including his testimony that "Fontenot had never driven Rychel's car before, had never asked to, and had not asked him to drive it on this occasion, but merely asked Rychel to drive her[.]" *Id.* Appellant argues that, like *Soodeen,* in the present case, the presence of a friendship and access to appellant's vehicle does not equate to implied permission. But unlike in *Soodeen,* there is evidence in this case that she had given him permission and he had driven her car on numerous occasions.

Appellant also relies on *Bowie v. Broussard,* No. 01–04–00941–CV, 2006 WL 727718, at *1, *3 (Tex.App.–Houston [1st Dist.] Mar. 23, 2006, no pet.) (mem.op.), arguing that the *Bowie* court concluded there was insufficient evidence of implied permission even though there was "more evidence than Plaintiffs presented in this case[.]" The court in *Bowie* concluded that the evidence the plaintiff presented to defeat the defendant car owner's no-evi-

dence summary judgment motion provided no more than a surmise or suspicion that the defendant had given the driver permission to drive her car. *Id.* at *3. The driver and the owner of the car were next-door neighbors and friends, the car was parked in their joint backyard with part of a broken key in the ignition and part on the floor, the driver had ridden in the car numerous times, the owner had never told the driver not to drive the car, and the owner did not file charges against the driver after learning she had taken the car without permission. *Id.* at *2. But unlike the present case, the one time that the driver in *Bowie* "had been given express permission to drive" the car was when she drove the owner to the doctor when she was too sick to drive herself. *Id.* at *2–3. In this case, Parks testified that he had driven appellant's car when he "needed to go get something that [he] needed the car for" and that, if he needed the car, she "would let" him "use it[.]"

Additionally, appellant relies on *Vaughn v. Watkins,* 344 S.W.2d 902, 903–04 (Tex. Civ.App.–Eastland 1961, writ ref'd n.r.e.), another car collision case resulting in death in which the jury found that there was no negligent entrustment.[3] The issue before that court was whether there was jury charge error. The court concluded that the trial court did not err by asking the jury whether the driver was entrusted with the truck at the time of the collision instead of just whether he was entrusted with the truck. The court stated that "previous use of the truck may be considered if it tends to show that at the time of the collision he was then entrusted with its use." *Id.* at 903. But unlike in *Vaughn,* our focus here is whether there is sufficient evidence—meaning more than a scintilla of evidence—to support the jury's

---

**3.** In *Vaughn,* the driver was "apparently drunk" at the time of the collision, but appel-

lant does not discuss that aspect of *Vaughn* in her argument. *Id.* at 903.

finding that appellant negligently entrusted her car to Parks. *See Exxon Corp.,* 348 S.W.3d at 215 (appellant attacking the legal sufficiency of an adverse finding on an issue on which the appellant did not have the burden of proof must demonstrate that there is no evidence to support the adverse finding). Consistent with *Vaughn,* the jury could reasonably infer from Parks's and Dickey's testimony that appellant had allowed Parks to use her vehicle repeatedly, and infer from Parks's testimony that he drove her car for personal reasons, and could choose to believe Parks and Dickey and disbelieve appellant.

Appellant also relies on *Royal Indemnity,* 399 S.W.2d at 345, in which the supreme court concluded that there was no evidence to support the jury's finding that a ranch employee, Landers, had the implied permission of his employer, ranch owner Herring, to drive Herring's truck when he drove the truck into a building. The court concluded that "the evidence show[ed] neither a relationship nor a prior course of conduct from which implied permission might fairly be inferred." *Id.* at 347. The court noted that Landers was employed as a ranch hand and he "had never driven one of the vehicles off the ranch except when specifically instructed to do so, and had never used any of them for a personal errand." *Id.* The court also noted that Herring had always driven Landers to town when he wanted to go, and that Herring "had no reason to believe that he intended or might need to use one of the vehicles on the evening of the accident." *Id.* Additionally, Landers had limited privileges in Herring's home, made occasional pleasure trips with Herring, had vehicles available to him, and used the vehicles on the ranch. Herring asked Landers whether he had a driver's license and had not instructed Landers not to use the vehicles off of the ranch. The court concluded that these facts "afford no basis for concluding that Landers had implied permission to use the truck for a trip to San Angelo on a personal mission." *Id.*

Appellant argues that—like the facts in *Royal Indemnity* —the "few instances" when appellant allowed Parks "to drive her car for specific business related errands" and Parks's access to appellant's car did not equate to appellant's implied consent for Parks to use her car on the night of the collision. But the facts in *Royal Indemnity* are distinguishable from the facts in this case: the only times Landers had driven a vehicle off of the ranch were three or four instances when he "was expressly instructed by Herring to pick up" the Herring children at a school bus stop. *Id.* at 345. In contrast, in this case, the evidence includes Parks's testimony that he drove appellant's car rarely when he "needed to go get something that [he] needed the car for" and that, if he asked appellant to use the car, she would let him use it. He did not testify that he only drove the car with appellant's express permission and for work. Dickey testified that Parks drove appellant's car "[m]aybe once a week" around the time of the collision. *See Soodeen,* 802 S.W.2d at 364 ("A person's consent for another to operate his automobile *can* be proved by circumstantial evidence."). Although appellant testified that she only allowed Parks to drive her car for "a specific task during work" and that he did not have permission to take her car "whenever he wanted," Parks's testimony was not so limited. And the jury is the sole judge of the weight to be given witness testimony and of witness credibility, and may choose to believe one witness and disbelieve another. *City of Keller,* 168 S.W.3d at 819; *see Jamar v. Patterson,* 910 S.W.2d 118, 121–22 (Tex. App.–Houston [14th Dist.] 1995, writ denied) (testimony of driver and owner of vehicle concerning entrustment conflicted

and court concluded that driver's testimony that owner had given her express and implied permission to drive vehicle constituted some evidence supporting element of entrustment); *Drooker v. Saeilo Motors*, 756 S.W.2d 394, 399 (Tex.App.–Houston [1st Dist.] 1988, writ denied) (reversing summary judgment as to negligent entrustment for some defendants and concluding deposition testimony provided some evidence that driver was authorized to drive appellees' vehicles in general and the fact that appellee manager did not know that driver would drive the car on the date of the collision would not preclude as a matter of law a finding that appellees entrusted driver with their vehicles).[4] We conclude that the evidence is legally sufficient to support the finding that appellant entrusted the vehicle to Parks. We overrule the portion of appellant's first issue challenging the legal sufficiency of the evidence concerning entrustment.

**Whether Appellant Knew or Should Have Known that Parks Was an Unlicensed, Incompetent, or Reckless Driver**

Appellant also argues that the evidence conclusively established that appellant did not know and had no reason to know that Parks was unlicensed or intoxicated at the time appellant allegedly entrusted her vehicle to Parks.

In order to establish liability on the negligent entrustment claim, appellees had to also show that, at the time of entrustment, appellant knew or should have known that Parks was an unlicensed, incompetent, or reckless driver. *See Goodyear*, 236 S.W.3d at 758. Given our conclusion regarding whether appellant knew or should have known that Parks was unlicensed, we do not address whether appellant knew or should have known that Parks was incompetent or reckless.

**Unlicensed**

■ Appellant contends that the evidence conclusively established appellant did not know that Parks was unlicensed.[5] Appellees stress that proof of the element does not require evidence that appellant knew that Parks was unlicensed at the time of the entrustment, but that appellant knew or should have known that Parks was unlicensed at that time. Appellees argue that the evidence is legally sufficient to support the jury's finding on this element.

We must assume that the jury made reasonable inferences from the evidence in favor of the prevailing party. *Guerra*, 348 S.W.3d at 228; *City of Keller*, 168 S.W.3d at 821. There was no dispute that Parks was unlicensed. Appellant testified that the first time that she heard that Parks did not have a driver's license was at Parks's criminal trial arising from the collision, and that "as his employer [she] nev-

4. In appellant's reply brief, she contends that appellees' reliance on *Jamar* is misplaced because, unlike in *Jamar*, the testimony in this case was not unequivocal or contradictory and instead was "only speculation and surmise" that appellant "gave implied permission for Parks to drive her car for personal reasons." Also, in appellant's reply brief, she argues that the facts of *Drooker* were not similar to the facts here "where Parks only had permission to drive the vehicle 'very rarely' for business purposes only." However, as discussed above, the evidence before the

jury—including the testimony by Parks, Dickey, and appellant—differed and provided a basis for the jury to reasonably infer that appellant gave implied permission to Parks to drive her car for personal purposes.

5. In her brief, appellant argues that there was no evidence that she knew that Parks was unlicensed. In her reply brief, she argues that there was no evidence that she knew or should have known that Parks was unlicensed.

er asked him if he had a valid driver's license[.]" She also testified that, although Parks had worked as her employee at a restaurant, she had no reason to look at his employee information because that was the responsibility of a manager, bookkeeper, or human resources employee. She testified that she assumed Parks had a driver's license because she "assume[d] everybody has a driver's license in Texas" and because she knew (from transporting him) that he cashed checks. She also testified that, if she had known Parks did not have a driver's license, she would not have let him use her car. And Parks testified that appellant did not know that he did not have a driver's license and that he had previously lied to her and told her that he had a license.

Although appellant testified that another person at her business was responsible for employee information and although Parks testified that he had previously lied to appellant that he had a driver's license, a jury could reasonably infer that—because, as Parks's employer, she had given him permission to drive her car—appellant should have known that Parks did not have a driver's license. In addition, a jury could reasonably infer that, because they were close friends and had been roommates for two years, appellant should have known that Parks did not have a driver's license. *See Guerra,* 348 S.W.3d at 228; *City of Keller,* 168 S.W.3d at 821. We agree with appellees that the evidence is legally sufficient to support the jury's finding that, at the time of the entrustment, appellant knew or should have known that Parks was unlicensed.

We overrule appellant's first issue.

### APPORTIONMENT OF RESPONSIBILITY

█ In her second issue, appellant argues that the court erred in apportioning responsibility to appellant under direct and derivative liability theories in contravention of this Court's ruling in *Rosell v. Central West Motor Stages, Inc.,* 89 S.W.3d 643, 656–57 (Tex.App.–Dallas 2002, pet. denied). In her original brief, appellant argues that she submitted proposed jury instructions that did not include appellant in the apportionment question of the jury charge but that the trial court overruled her objection and instead included appellees' requested submission of the apportionment question. But in her reply brief, appellant concedes that her arguments in her original brief were incorrect: she had submitted a proposed jury charge that included her name in the apportionment question, the trial court had not overruled her proposed question, and she made no oral objections at the charge conference. Nevertheless, she argues that if she did not waive this argument, this Court should reverse and remand because the trial court abused its discretion in submitting a defective question. Appellees argue that appellant waived this argument by not objecting to the apportionment question in the jury charge and invited error by submitting an apportionment question that included her name.

█ We agree with appellees that appellant waived this issue. In order to preserve a jury charge complaint on appeal, the complaining party must make an objection before the trial court. *Thota v. Young,* 366 S.W.3d 678, 689 (Tex.2012) (citing rule of civil procedure 274 and rule of appellate procedure 33.1); *State Dep't of Highways & Pub. Transp. v. Payne,* 838 S.W.2d 235, 241 (Tex.1992) (stating test to preserve error in the jury charge is "whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling"). Additionally, "[a] party cannot ask something of the trial court and then complain that the court erred by granting the request." *Haler v.*

*Boyington Capital Grp., Inc.,* 411 S.W.3d 631, 637 (Tex.App.–Dallas 2013, pet. denied) (stating "if we assume without deciding that the charge was erroneous, the doctrine of invited error provides that a party may not complain of an error which the party invited"). Appellant included her name in her proposed submission of the apportionment question and invited any error. We overrule the portion of appellant's second issue concerning the apportionment of responsibility to appellant.

### JOINT AND SEVERAL LIABILITY

■ As part of her second issue,[6] appellant argues that the trial court incorrectly interpreted chapter 33 of the civil practice and remedies code to find that a defendant assigned ten percent responsibility can be held jointly and severally liable for the total amount of damages.[7] She asks this court to render judgment holding appellant responsible for only ten percent of responsibility that the jury directly apportioned to her.

Section 33.013 of the civil practice and remedies code provides in relevant part:

(a) Except as provided in Subsection (b), a liable defendant is liable to a claimant only for the percentage of the damages found by the trier of fact equal to that defendant's percentage of responsibility with respect to the personal injury, property damage, death, or other harm for which the damages are allowed.

(b) Notwithstanding Subsection (a), each liable defendant is, in addition to his liability under Subsection (a), jointly and severally liable for the damages recoverable by the claimant under Section 33.012 with respect to a cause of action if:

(1) the percentage of responsibility attributed to the defendant with respect to a cause of action is greater than 50 percent[.]

TEX. CIV. PRAC. & REM. CODE ANN.§ 33.013 (West 2015).

Appellant argues that "the circumstances under which a defendant can be held jointly and severally liable" under civil practice and remedies code section 33.013 "are not present in this case" because the jury allocated ten percent of responsibility to appellant, which is less than the fifty percent of responsibility required for the imposition of joint and several liability under the statute. Appellant relies on *North American Van Lines, Inc. v. Emmons,* 50 S.W.3d 103, 112 (Tex.App.–Beaumont 2001, pet. denied), a car collision case in which a jury apportioned five percent of responsibility to the driver, twenty percent to the moving company that owned the van, forty percent to the carrier that leased the van, and thirty-five percent to the carrier's subsidiary. The appellate court reversed the trial court's imposition of joint and several liability, concluding that, because no defendant was found by the jury to have greater than fifty percent responsibility for the collision as required

---

**6.** Appellant lists this issue as her third issue in the section of her brief entitled "ISSUES PRESENTED FOR REVIEW" but discusses it as part of issue two in the argument section of her brief.

**7.** In her reply brief, appellant argues that (1) appellees also waived any objections to the jury charge and (2) based on the wording of the jury charge, the "jury never determined

that [appellant] was vicariously liable for negligent entrustment" but only her direct negligence and, as a result, appellant could not "be held vicariously liable for more than 10%" and could not "be held jointly and severally liable for Parks' negligence." "[W]e do not consider arguments raised for the first time in a reply brief." *Hunter,* 339 S.W.3d at 803 n. 5.

by section 33.013(b), no defendant was jointly and severally liable under the statute. *Id.* at 113, 116, 130; *see* TEX. CIV. PRAC. & REM. CODE ANN.§ 33.013(b).[8] We agree with appellees that *Emmons* is distinguishable because the *Emmons* court did not address whether an owner of a vehicle could be held jointly and severally liable through a negligent entrustment claim, which is involved in this case.

Appellant also argues that, "[u]nder derivative liability," she "would be responsible for the percentage of responsibility assigned to Mr. Parks"—eighty-five percent—and "because she was assigned her own percentage (10%) she cannot be held jointly and severally liable for [the combination of] her and Mr. Parks' percentage under the statute." But appellant provides no authority for this argument, other than stating that appellees "should not be allowed to ignore the statute and rely on *Rosell* to obtain the result *Rosell* intended to prevent." We disagree. *Rosell* concerned which defendants should be included in the apportionment question concerning negligent entrustment or hiring under civil practice and remedies code section 33.003. *Rosell,* 89 S.W.3d at 656–57; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003 (West 2015). *Rosell* does not concern the percent of liability attributable to a defendant under joint and several liability as required by section 33.013(b). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.013(b).

In addition, she argues that, if she and Parks are held jointly and severally liable, the assessment of responsibility to both of them would violate the proportionate responsibility statute by apportioning more than one hundred percent of responsibility.

As authority, appellant cites *In re Sunpoint Securities, Inc.,* 377 B.R. 513, 569 (Bankr.E.D.Texas 2007), which stated that civil practice and remedies code section 33.003 "is properly interpreted to require only a single assessment of proportionate responsibility involving the apportionment of 100 percentage points of responsibility among all proper persons whose actions have been found to have caused the particular harm under one or more submitted theories of recovery." But the *Sunpoint* bankruptcy case is distinguishable as it did not concern the effect of joint and several liability on the percentage of responsibility of each party.

In summary, we have concluded that there is sufficient evidence supporting the jury's finding that appellant negligently entrusted her car to Parks. And "[n]egligent entrustment liability is derivative in nature." *Loom Craft Carpet Mills, Inc. v. Gorrell,* 823 S.W.2d 431, 432 (Tex.App.–Texarkana 1992, no writ); *see F.F.P. Operating Partners, L.P. v. Duenez,* 237 S.W.3d 680, 686 (Tex.2007) (describing "negligent entrustment" as "a form of vicarious liability"). Additionally, "[w]hen the driver's wrong is established, then by negligent entrustment, liability for such wrong is passed on to the owner." *Loom Craft,* 823 S.W.2d at 432; *see Rosell,* 89 S.W.3d at 657 ("Once negligent ... entrustment is established, the owner/employer is liable for the acts of the driver.").

Because the jury allocated eighty-five percent causation to Parks, the eighty-five percent of responsibility that the jury assessed to Parks was passed on to appellant.[9] As a result, appellant's responsibili-

---

8. The court then analyzed various legal vicarious liability and equitable veil piercing theories that appellees contended made appellants liable for each other's conduct "despite the proportionate responsibility statute." *Emmons,* 50 S.W.3d at 116–22.

9. In addition, the jury allocated ten percent responsibility directly to appellant. As discussed above, appellant waived her argument that the court erred in apportioning responsibility to appellant under direct as well as derivative liability theories.

ty for the collision exceeds fifty percent and, under section 33.013(b), appellant is jointly and severally responsible for the damages assessed by the jury against Parks and appellant totaling ninety-five percent of the judgment. We overrule the portion of appellant's second issue concerning appellant's joint and several liability.

CONCLUSION

We overrule appellant's issues and affirm the trial court's judgment.